[S. F. No. 10490. In Bank.—September 7, 1923.]

GREAT WESTERN POWER COMPANY OF CALIFOR-NIA (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—INDUSTRIAL ACCIDENT COMMISSION—REVIEW OF AWARDS—JURISDICTION OF COURT.—The supreme court has jurisdiction in a proceeding in *certiorari* to annul an award of the Industrial Accident Commission for injuries, where upon the facts found the statute prescribes the amount to be allowed as a death benefit and the commission allows a different amount, rendering an unlawful award and one in excess of its authority.

[2] ID.—INDUSTRIAL ACCIDENT COMMISSION — REHEARING — MODIFICATION OF AWARD—JURISDICTION.—Under subdivision (e) of section 64 of the Workmen's Compensation Act, the Industrial Accident Commission has broad powers in the matter of rehearings, and it has the power, after having found that brothers and sisters of the deceased employee were not dependent upon him for their support, on rehearing to find that the deceased employee left surviving him besides his father and mother minor brothers and sisters who were partially dependent upon him for support, and to make an amended award to the father, in his own right to be used for the support of all the dependents.

[3] ID.—ANNUAL AMOUNT FOR PARTIAL DEPENDENTS—DEDUCTION OF SUPPORT OF DECEDENT.—In determining the annual amount devoted to the support of partial dependents, in such proceeding,

the amount of the general family expense paid by the decedent must be diminished by deducting the fair proportion thereof that went not only to the support of the decedent, but to others in the family who were not dependent upon him.

[4] ID.—DEPENDENTS—FINDING—REVIEW BY COURT.—Under the statute of this state the supreme court cannot disturb a finding in such a proceeding as to who were the dependents of the deceased.

[5] ID.—DEPENDENCY—TIME.—The fact of the dependency of dependents on the earnings of an employee, and the degree thereof, must be determined in accordance with the existing fact at the time of the injury.

[6] ID.—CONTRIBUTION TO FAMILY—FINDING AS TO PARTIAL DEPENDENTS.—Where the evidence in such a proceeding showed that all of the money, earnings, wages, and profits of the deceased employee went into the common family fund, which was used for the support of the members of the family, the finding of the Industrial Accident Commission as to who were partial dependents cannot be disturbed.

[7] ID.—AMOUNT OF CONTRIBUTION TO SUPPORT OF DEPENDENTS—TIME FOR ESTIMATING.—In such a proceeding, the annual amount of the decedent's contribution to his dependents, of which the statute speaks, is not the amount actually contributed in the last, or any other, year of the decedent's life, but is the annual amount of the rate at which the decedent was contributing at the time of his injury, regardless of whether that rate had existed for a year or more or for less than a year.

[8] ID.—CONTRIBUTION TO SUPPORT OF DEPENDENTS — DOMESTIC SERVICES.—Under the Workmen's Compensation Act, in arriving at the amount an employee devoted to support of those partially dependent upon him, an arbitrary valuation should not be placed upon those domestic services which any or every member of the family might be called upon to render as occasion arose.

[9] ID.—SUPPORT—DEFINITION.—Support, as used in the Workmen's Compensation Act, means that which furnishes a livelihood to a person or family; a source or means of living; also subsistence, sustenance; living.

---

4.  Right and extent of review of findings of Industrial Accident Commission under workmen's compensation acts, notes, Ann. Cas. 1916B, 475; Ann. Cas. 1918B, 647; 13 A. L. R. 722; L. R. A. 1917D, 186.

5.  Who are dependents within meaning of workmen's compensation acts, notes, Ann. Cas. 1913E, 480; Ann. Cas. 1918B, 479; 13 A. L. R. 686; L. R. A. 1916A, 121, 163, 248; L. R. A. 1917D, 157; L. R. A. 1918F, 483.

PROCEEDING in Certiorari to review an order of the Industrial Accident Commission awarding compensation for death of an employee.    Award annulled.

The facts are stated in the opinion of the court.

Guy C. Earl, W. H. Spaulding and Cooley & Crowley for Petitioner.

Warren H. Pillsbury, A. E. Graupner and W. F. Beem for Respondents.

WASTE, J.—This is a proceeding in *certiorari* to review an award of the respondent Industrial Accident Commission upon the ground that the Commission rendered an unlawful award and one in excess of its authority. Lorin L. Savercool, while employed as a mill-hand by the petitioner, Great Western Power Company, the employer and employee being then subject to the provisions of the Workmen's Compensation, Insurance and Safety Act (Stats. 1917, p. 831), sustained an injury occurring in the course of and arising out of his employment. His right hand and arm were caught in the moving machinery of an edger, resulting in lacerations and other injuries which proximately caused his death.

At the time of his decease the injured employee was only twenty years old. For many years he and his father had jointly supported the father's family, consisting, besides himself, of the father, mother, and nine children. In addition to these members of the family, the employee's grandfather, aged seventy-three years, resided with them part of the time. On application filed with the Industrial Accident Commission for a death benefit on account of the injury, the Commission found that the entire family, other than the grandfather and one sister, were partially dependent on the injured employee for support. His annual contribution for that purpose, it found, amounted to $1,366.66. On that sum, as a basis of computation, it made an award in the sum of $4,099.98, which it directed to be paid to James Savercool "in his own right to be used for the support of all the dependents." This award petitioner seeks to have

annulled. The situation thus presented is one of partial dependency, in which case the dependents are entitled to recover the reasonable expense of the deceased employee's burial, not to exceed $100, and, in addition thereto, a death benefit which shall be equivalent to three times the annual amount devoted by the deceased to the support of the person or persons so partially dependent. (Workmen's Compensation Act, sec. 9 (c) [2].) Petitioner's contention is that the respondent exceeded its jurisdiction in making the award here under review, in that it made an allowance greatly in excess of the statutory limitation. It does not question the right of the respondent to award some compensation to the dependents of the deceased employee, but raises an issue as to the lawfulness of the award made.

[1] The respondent's first line of defense to the attack of the petitioner is that there is evidence to support the findings of fact it made on the hearing, and, therefore, its action cannot be reviewed in this proceeding. It relies, of course, upon the provision of the statute which declares that the findings and conclusions of the Commission on questions of fact shall be conclusive and final, and shall not be subject to review. (Workmen's Compensation Act, sec. 67 (c).) Its position, in effect, is that the power of this court to annul and set aside an award of the Commission is confined to those cases wherein the Commission has made a finding as to some jurisdictional fact which is not supported by the evidence, and that it does not go to a case where, upon the facts found, the Commission has authority to make an award, but has made one contrary to what the law calls for upon those facts. In passing upon the same contention in an earlier case the court said: "Section 67 (a) of the Workmen's Compensation Act says that any party affected by a final order of the commission 'may appeal to the supreme court of this state . . . for a writ of *certiorari* . . . for the purpose of having the lawfulness of the original order . . . inquired into and determined.' It is the lawfulness of the award in question that is now under consideration. Upon the facts found the statute prescribed the amount to be allowed as a death benefit, and the commission in allowing a different amount rendered an unlawful award and one in excess of

its authority." (*Spreckels Sugar Co.* v. *Industrial Acc. Com.*, 186 Cal. 256, 260 [199 Pac. 8, 10].)

The petitioner also contends that the award is unreasonable as being greater in amount than is legally allowable in this case. Such contention goes beyond the question of reasonableness of the amount allowed as compensation, and is, in effect, a restatement of the claim that the award was unlawful. Therefore, whether or not respondent is correct in its position, that the alleged unreasonableness of the award is not a ground of review by this court, does not require further consideration in this connection.

[2] We note, first, a contention of petitioner which fails of meritorious support. After what appears to have been a full and comprehensive hearing before the Commission, it found that the brothers and sisters of the deceased employee were not dependent upon him for their support, but that he, being a minor, was contributing and paying to his parents his entire earnings. An award was thereupon made in favor of James and Lillian Savercool, father and mother of the decedent. On application of the petitioner, and on alleged grounds that the Commission acted in excess of its powers; that the evidence did not justify the findings, and of newly discovered evidence, the respondent granted a rehearing. After another full and exhaustive hearing, the Commission found that the deceased employee left surviving him, besides his father and mother, eight minor brothers and sisters, who were partially dependent on him for support, and one sister concerning whom the respondent found the evidence was insufficient to establish that she was dependent upon the decedent at the time of the injury. The award was, therefore, amended and directed to be paid to the father, in his own right, to be used for the support of all the dependents. In taking this action, petitioner asserts, the Commission exceeded its powers. There is involved, it argues, "the question as to the power of the Commission to amend an award where, by the original award, the sisters and brothers were held not to have been dependents and the rehearing was granted with reference to the award made in favor of the father and mother 'in order that the proper amount of the death benefit should be reconsidered,' without giving notice of the intention to reopen the case as to the de-

pendency of the brothers and sisters.'' What, if any, notice of the rehearing was given by the Commission does not appear in the record, neither does it contain a copy of the order granting a rehearing. The petitioner made a general application for a rehearing, on the grounds already enumerated, and without in any way limiting the issues raised by such request. Under such an application the whole subject matter was reopened for further consideration and determination, and the issues thus raised were as broad as those raised on the original application for compensation. Under subdivision (e) of section 64 of the Workmen's Compensation Act the Commission has broad powers in the matter of rehearings. (*Pruitt* v. *Industrial Acc. Com.*, 189 Cal. 459 [209 Pac. 31].) If it were of the opinion, as it apparently was, that the original award was unjust as first made, it had plenary power to modify it. Section 64 (f) of the act so provides. At the outset of the first hearing, James Savercool, father of all the minors, had been appointed their guardian *ad litem*, and the minors, by such guardian *ad litem*, were joined as parties applicant. At all times they were properly before the Commission. Section 14 (e) of the act authorizes the Commission to award the death benefit among the dependents in such manner as may be in proportion to their respective needs, and just and equitable, even to the total exclusion of one or more of them. (*Perry* v. *Industrial Acc. Com.*, 176 Cal. 706, 710 [169 Pac. 353].) It was under this provision that the action of the Commission was taken in the case at bar. It found that it was for the best interests of all parties that the entire award be paid to James Savercool, in his own right, to be used for the support of all the dependents. It would seem ''just and equitable'' that in such a case as this the entire award, if one be made, should be paid to the husband and father of a large family for the common support of all (*Woodcock* v. *Walker*, 170 App. Div. 4 [155 N. Y. Supp. 702]; *People's Hardware Co.* v. *Croke*, 66 Ind. App. 340 [118 N. E. 314], where the finding of fact as to who were the dependents in the case finds support in the evidence.

It makes a very material difference to this petitioner whether or not the amended finding of the Commission,

that not only the father and the mother, but eight of the minor brothers and sisters of the employee were dependent upon him, is to stand, or whether the original finding, that only the father and the mother were dependent upon the employee, shall be the basis of the award. [3] In determining the annual amount devoted to the support of partial dependents, the amount of the general family expense paid by the decedent must be diminished by deducting the fair proportion thereof that went not only to the support of the decedent but to others in the family who were not dependent upon him. (*Federal Mutual L. Ins. Co.* v. *Industrial Acc. Com.*, 186 Cal. 517, 519 [199 Pac. 796].) [4] Under the statute of this state, however, we are of the view that we cannot disturb the finding as to who were the dependents. The Workmen's Compensation Act, section 14, after providing who shall be conclusively presumed to be wholly dependent for support upon a deceased employee, states: ''(b) In all other cases, questions of entire or partial dependency, and questions as to who constitute dependents and the extent of their dependency shall be determined in accordance with the fact, as the fact may be at the time of the injury of the employee.'' The father, mother, brothers, and sisters of a minor are not included in any of the classes in which dependency is conclusively presumed by the terms of the act. [5] The fact of their dependency on the earnings of the employee, and the degree thereof, must therefore, be determined in accordance with the existing fact at the time of the injury. (*In re Peters*, 65 Ind. App. 174 [116 N. E. 848]; *Havey* v. *Erie R. R. Co.*, 88 N. J. L. 684 [96 Atl. 995, 996]; *Bylow* v. *St. Regis Paper Co.*, 179 App. Div. 555 [166 N. Y. Supp. 874, 877]; *O'Flynn's Case*, 232 Mass. 582 [122 N. E. 767, 768]; *Walz* v. *Holbrook etc. Corp.*, 170 App. Div. 6 [155 N. Y. Supp. 703].) [6] In view of the evidence that all of the money, earnings, wages, and profits of the deceased employee went into the common family fund which was used for the support of the members of the family, we are of the opinion that the finding of the Commission as to who were partial dependents in this case cannot be disturbed. (*Fuller* v. *Inman*, 10 Ga. App. 680 [74 S. E. 237].)

From the evidence taken before the Commission it appears that Lorin L. Savercool, the employee for whose

death compensation was sought, lived with his father and mother, who were the original applicants for the compensation in this case. In addition to Lorin there were nine other minor children. The family lived on a farm, owned by the father, which consisted of possessory mining claims held in the name of the mother. There were several claims in the group, some of which were regarded as claims of Lorin. The house in which the family lived, according to the testimony of James Savercool, the father, belonged to himself and Lorin. He testified, "we sawed the lumber in our own mill and built the house." In addition to working this home place, the father and Lorin worked on another piece of land in Tehama County, the title to which was in the United States government, but which had been homesteaded by Lorin's grandfather. The relation of the deceased to that property was described by the father as follows: "My father who is a very old man had it understood with my son that if he would take care of him in his old age, at the time that he received a patent to this claim, the property would be deeded to Lorin L. Savercool, and my connection with it was that I was simply helping along to improve the property and the small bunch of cattle and horses which we have on the ranch. It was a kind of family arrangement as to the acquiring of title to the ground." Concerning what seems to have been another piece of property, the father testified: "He [Lorin] had an interest, that is, I never deeded him any interest but it stood this way, that as long as he was able to help me, I considered that, and so did he, that he owned a half interest in that property and that in time I would deed half of it to him."

The father and Lorin engaged in certain joint enterprises, such as buying and raising cattle and hogs. With another person, they appear at one time to have been joint owners in a truck, by the use of which they made considerable money. At one time, also, they leased a mine in Plumas County, in the working of which venture they cleared, according to the father, five dollars a day each while working the property, the larger amount of which, we may judge from the testimony, they expended in developing the mine. When not engaged in work on either of

their properties the father, who is a carpenter, worked for wages for various people. The boy, Lorin, within a year and a half prior to his injury, was engaged, at one time in doing some contracting work, at another time for the county of Plumas, and for some months prior to his death, he had been in the employ of petitioner. All the money he received from his share of the profits in the joint enterprises in which he was engaged with his father or others, and all the wages paid to him by the county of Plumas and this petitioner, were deposited by Lorin in bank in the joint names of his father and himself. This money, so the father testified, was used for the maintenance of the entire Savercool family, and for such other expenses as from time to time were incurred by Lorin and his father. The cattle which they bought were also paid for out of this fund. In running the household, all the bills, according to the father, were paid out of this same deposit. There was no separation of funds between Lorin and his father. According to the latter, it took everything both made "to keep the family." It was all given to the wife and mother, who attended to paying out the money for the house, and bought the necessary supplies and needed clothing. Bills for the house were made out in the names of Lorin L. and James Savercool. This arrangement existed as far back as the inquiry before the Commission went. In describing the relation between himself and Lorin, and how it came about, the father said: "There was no understanding at all, he [Lorin] just from his babyhood up had drifted along that way, and as he became older and could do things and could go ahead, we simply worked along as partners and whatever he said went and whatever I said went. . . . We just sort of double-teamed on it together the main object in view being for the two of us to take care of the family."

As a result of the joint endeavors of Lorin and his father they deposited in bank during the year preceding Lorin's death $2,815.21. Of this amount the record indicates that $600 was derived from rent of the Ohio Valley ranch, $214.86 was a balance due upon the sale of hogs, $250 was for a boiler sold by the father, $44.60 balance due from this petitioner for team hire of father and son, and

about $200 from the hire of the Ford truck. It seems reasonably certain, also, that some $300 of the amount deposited in bank was derived from the sale of cattle, and there were several items of bank deposits which are unexplained. During the period of little more than a year preceding his death Lorin actually earned $1,056.59, consisting of $792.23 wages and wagon hire paid by petitioner, $117 for wages and team hire paid by Plumas County, and $147.36 from sale of furs from animals trapped by him. The Commission found that Lorin's "annual contribution" for the support of the partially dependent family was $1,366.66, or $310.07 more than he earned during the year preceding his death, and awarded compensation in three times that amount. It is the contention of the petitioner that the record shows certain sums that can be definitely eliminated as not having been "devoted to the support" of the dependents. Payments shown to have been made by Lorin, or by Lorin and his father, for purposes other than support of the family, and which are objected to by the petitioner, include hospital dues, $5; purchase of cattle, $255; purchase of a Ford truck, $66.66; cash spent on development of Mill Creek ranch, including maintenance of W. W. Savercool, Lorin's grandfather, $200. Other items included by the Commission in arriving at the "annual contribution" made by the employee will be referred to later.

We do not agree with the respondent's contention that the only issue in the case is, who are the dependents and the extent of the dependency. After a review of the record we are convinced that respondent adopted an erroneous method in arriving at the amount devoted by the decedent to the support of the dependents in this case. The record covers a three-year period—from October 1, 1917, to and including September 17, 1920, the date of Lorin Savercool's death. The respondent says that, owing to the fact that no absolute record was kept, it is not practical to go back and cover the contributions over this entire time, and that in deciding the case it worked with two distinct periods: A period of one year immediately preceding the injury, and the period during which Lorin was employed, beginning May 1, 1920, and up

to the date of his injury, September 17th of the same year. It then proceeds to set out two schedules "wherein it will specifically appear," it says, "that the reasonable value of Lorin's support was deducted from the annual amount devoted." In Schedule "A," under a general heading "Support at Mill Creek Ranch," it included the following items: "Value of Lorin's work roofing the house, $100.00; value of Lorin's work splitting 50 or 60 tiers of wood, $60.00; 30 days in garden at $4.50, $135.00; 10 days making fence, $45.00; 30 days splitting rails, $135.00; clearing land and planting alfalfa, $54.00; 32 days running pack train $5 a day, $160.00; 6 days taking family to ranch, $30.00." The item of "32 days running pack train" has reference to transporting the family supplies from the nearest point of transportation to the ranch. To the aggregate amount of these items, $719, it added as "contributions received from various sources" all the wages received by Lorin during the year from this petitioner and the county of Plumas; two items for furs from animals trapped in the winter season and sold by him; an item for milk sold; four different items for Lorin's share in profits from sales of cattle and in "butchered hogs," and $150, at $1 a day, for the greater part of the time he was actually engaged in working for this petitioner for "furnishing milk and butter for the family." From the aggregate sum of these "contributions," $2,180, the Commission deducted for Lorin's individual support, estimated at $30 per month for twelve months, the sum of $360, leaving what it terms "annual contribution for support $1821.81." In Schedule "B," which the Commission says "covers a period of four and a half months, beginning May 1, 1920, to the date of the injury, the period during which Lorin was working for wages, there are included the following items: "Stone & Webster, $586.40; Plumas County, $117.00; Shubert Co. [for furs] $147.16; Furs, other than sold Shubert, $45.00; Milk, $37.50; Steer, $26.25; Sow $27.50; in addition to the above cash items the value of Lorin's services at Butte Valley, furnishing milk and butter for the family, $150.00"; making a total contribution of $1,136.81. From this aggregate amount respondent deducted $135 for four and a half months, support of Lorin at

$30 per month, leaving a remainder of $1,001.81. This sum it divided by 4½, the number of months taken into account, the result being $222.62. This last amount multiplied by 12, the number of months of the year, gives as a result the sum of $2,671.44. We do not know by what method or process of reasoning the respondent arrived at the sum of $1,366.66 in its computation, but, referring to the sum of $1,821.81, which, according to Schedule "A," was the "annual contribution for support," it says: "As the Award found an annual amount devoted to support of $1,366.66, even by taking the highest estimate in the entire record on the cost of Lorin's support which is sixty dollars higher than that found in the first Finding and Award, a balance is left of $454.15, which was not allowed by the Commission. This is in petitioner's favor and shows how liberally the Commission reduced the applicant's estimated values as testified to in the record, and made allowances for other matters in petitioner's favor." Respondent also deducts the sum of $1,366.66 from $2,671.44, the result obtained in Schedule "B," the remainder being $1,304.78, which it designates as "excess annual amount devoted over and above amount allowed." "Under Schedule 'B,' " it says, "which is entirely logical and seems to be consistent with petitioner's argument, there is such a large surplus over the amount allowed by the Commission that it is apparently unnecessary for the court to read the record to trace out a matter of forty or fifty dollars."

In this offhand way the Commission relies upon this court to sustain its action and affirm its award. Did we feel it incumbent upon the court to search the record for evidence which is not pointed out, and which may or may not be found, we would still be unable to sustain the award made in this case. Respondent assumes that the court will accept its proposition that it reduced the applicant's estimated values of the support contributed by Lorin, and make allowances for other matters in petitioner's favor. We do not doubt that it may have done so, but it has not pointed out wherein, how or why it did so, or the amounts of any such reductions. The findings are of a stereotyped form and are confined to a few ultimate facts. The brief of respondent supplies but little in the way of assistance in arriving at a

solution of the financial question of support, other than the two schedules referred to.

[7] From what does appear in the briefs of the contesting parties, however, it is apparent that respondent, in seeking to arrive at the "annual amount devoted by the deceased to the support of the persons partially dependent" on him, did not follow the method suggested by this court in *Spreckels Sugar Co.* v. *Industrial Acc. Com.,* 186 Cal. 256 [199 Pac. 8]. That was a case of partial dependency, and the Commission computed the death benefit by taking as the annual amount of the decedent's contribution the amount he had actually contributed during the year immediately preceding his death. The employer contended on *certiorari* to this court that this was an erroneous computation; that the annual amount of which the statute speaks is not the amount actually contributed in the last, or any other, year of the decedent's life, but is the annual amount of the rate at which the decedent was contributing at the time of his injury, regardless of whether that rate had existed for a year or more, or for less than a year. The court held that the employer's contention was correct, saying: "The whole theory of the compensation act as to death cases is that the dependents of the employee killed through some hazard of his employment shall be compensated for the loss of the support they were receiving from him at the time of his injury. This necessarily means that the death benefit must be computed on the rate of contribution at that time. It is the rate which is the measure of the loss, not the gross amount which the decedent has happened to pay through any past year, or through any other period of time." (Page 258.) Clearly, then, any computation in this case based on Schedule "A," which admittedly sets out the employees's gross earnings, and many other items of alleged "contributions" for one year prior to his death, is erroneous and must be disregarded. Schedule "B," which covers an exact period of four and a half months, is open to the same general objection just pointed out in relation to Schedule "A." It has an additional infirmity. It includes the amount paid Lorin for himself and his team of horses. Such earnings were certainly disconnected from and far disassociated from his employment and earnings at the time of his death. The two

items for furs sold were returns of sales of furs from animals trapped during the previous winter. The item for "milk" relates to one-half of the amount realized from sales of milk during the summer of 1920. Lorin and his mother milked the cows, jointly owned by Lorin and his father. Mrs. Savercool made out the bills, the money was paid to her and by her used for family expenses. The items "steer" and "sow" cover Lorin's share of profits on sales made a year before the injury. The item of $150, for "Lorin's services of Butte Valley, furnishing milk and butter for the family" at the rate of $1 per day, covers a period when he was employed by petitioner. It seems that while so employed Lorin milked the cows at home, mornings and evenings, putting in two hours a day. Sometimes the father did the milking. This work the Commission rated as being worth fifty cents per hour, and included $150 as a contribution for the support of the family. It is at once apparent that none of the items of so-called contribution contained in Schedule "B," other than the wages paid by this petitioner, have any relation to the rate of contribution at the time of the employee's death. Respondent cites no persuasive authority in support of its action in charging against this defendant a fixed amount for the services of the employee rendered in and around the home—petitioner calls it doing the chores—when not otherwise employed. The cases referred to by the Commission deal merely with the question whether or not rendition of household service and work about a farm may be considered in determining whether or not the other members of the family are dependent. (*Fuller v. Inman, supra; Southern Surety Co. v. Hibbs* (Tex. Civ. App.), 221 S. W. 303.) In no case that we can find has the value of these services been taken into consideration in fixing an "amount devoted to support." [8] We are of the opinion that it was never intended by the framers of the Workmen's Compensation Act that in arriving at the amount an employee devoted to support of those partially dependent upon him an arbitrary valuation should be placed upon those domestic services which any or every member of the family might be called upon to render as occasion arose. [9] "Support" as used in the act means, we take it, "that which furnishes a livelihood to a person or family;

191 Cal.—47

a source or means of living; also subsistence, sustenance; living.'' (Standard Dictionary.) Milking the cows morning and evening, when no other member of the family did it, was not, in our opinion, devoting an amount, or any amount, to the ''support'' of the dependents as that term is intended to be construed by the provisions of the act.

Lorin went to work for the petitioner the 1st of May preceding his injury. From the pay-roll in evidence it appears that his wages were $126.99 for the month of May and $459.41 for the period from July 1st to September 17th, the date of the accident. For some time before his injury the rate of compensation for his services in the mill of petitioner was seventy-four cents per hour. All of his wages, other than a small deduction for supplies obtained from petitioner's commissary by the Savercool family, were paid by checks. These he usually gave to his mother for deposit in the joint bank account of his father and himself. The whole amount, according to the evidence, was in fact turned into the common family fund, which, as has been related, was used for the upkeep of the different ranches, for whatever business affairs the father and son engaged in, and for the support of the family. These facts afford a plain, simple, and, in the light of the Spreckels' case, the only logical and legal method of computing the annual amount devoted by the deceased to the support of the dependents. Mr. Justice Olney said in that case: ''It [the Workmen's Compensation Act] provides that not only shall the question of the condition of dependency as entire or partial be determined as of the date of injury to the employee, but also that the extent of dependency shall be determined as of that date. The provision of the statute that in cases of partial dependency the death benefit shall be proportioned to the amount of the annual contribution of the employee is but a provision that the death benefit shall be proportional to the extent of the dependency, so that the effect of the two provisions is that it is the annual contribution as of the time of injury that is to be taken. This can be only a rate of contribution, since it is a point and not a period of time by which the contribution is to be determined.''

It is the rule in this state, contrary to that which prevails in some other jurisdictions, that, in arriving at the annual amount devoted to the support of dependents, the sum of

the general family expenses paid by the decedent must be diminished by deducting the fair proportion thereof that went to the support of the decedent, and of others in the family who were not dependent upon him. Everything must be excluded therefrom except the amount of his contributions that was devoted to the support of the dependents. (*Federal Mutual L. Ins. Co.* v. *Industrial Acc. Com., supra.*) The extent of dependency and the annual amount devoted to support are to be measured as of the date of the employee's injury. (*Spreckels* v. *Industrial Acc. Com., supra.*) In this case the Commission found that one of the sisters of the decedent, Evelyn Savercool, was not dependent upon him. The testimony is that she had become self-supporting shortly prior to her brother's injury. No deduction was made because of that fact, the respondent explaining that, since the amount of Lorin's contribution remained the same, no part of his payments went to Evelyn's support at the time of the injury, and the Commission "disregarded this factor." The change in Evelyn's condition, it says, merely had the effect of increasing the rate of contribution devoted to the support of the rest of the family at the time of the injury. Such contention does not meet the requirement of the case. (*Federal Mutual L. Ins. Co.* v. *Industrial Acc. Com., supra.*)

The Commission found that the deceased employee's "annual contribution" for the support of the dependents was $1,366.66. There is no finding that any part or portion of this amount was actually *devoted* by the deceased to the support of the dependents, yet the statute in this state, differing in this respect from compensation acts in other jurisdictions, expressly provides that it is not the amount of contributions which shall be the basis of the computation, but it must be three times the annual amount *devoted* by the deceased to the support of the person or persons so partially dependent. It is the amount actually devoted by the employee to such support that fixes the compensation. The amount, it would seem, must not only be contributed for support, but it must be actually applied wholly to that purpose. It is very easy to conceive of a case, by way of illustration, in which only a small part or portion of what may be contributed will be devoted or applied to support, the rest be-

ing placed in bank or invested. The compensation act of Wisconsin uses the words "the amount devoted by the deceased" in declaring the measure of compensation in cases of partial dependency. In the dissenting opinion in *Milwaukee Basket Co.* v. *Wiecki*, 173 Wis. 391 [181 N. W. 308], this persuasive language is used: "[We] cannot believe that it was the legislative intent that a father should be permitted to swell his investment account at the expense of an employer of his son, or at the public expense, if it, instead of the employer, ultimately bears the burden. Neither in popular nor technical language does the word 'support' connote a meaning common to either 'investment' or 'savings,' and judicial construction should not change its meaning." Such a situation is not presented here, but may occur in similar cases at any time. A finding in the language of the statute should be made.

The award is annulled and the cause is remanded to the Industrial Accident Commission for further proceedings in accordance with this opinion.

Lawlor, J., Wilbur, C. J., Lennon, J., Myers, J., Seawell, J., and Richards, J., *pro tem.*, concurred.

Rehearing denied.