[Civ. No. 4824. Second Appellate District, Division Two.—February 16, 1925.]

## THE OWL DRUG COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA and LUCINDA BLACK, Respondents.

[1] WORKMEN'S COMPENSATION ACT—FINDINGS—EVIDENCE—JURISDICTION—CERTIORARI.—Findings of the Industrial Accident Commission will not be disturbed by an appellate court if based upon some evidence, or upon conflicting evidence, but where there is no evidence to support a finding a review may be had on the theory that the Commission had no jurisdiction to make it.

[2] ID.—PARTIAL DEPENDENCY—FINDING—EVIDENCE—CERTIORARI.—In this proceeding to review an award made by the Industrial Accident Commission in favor of the mother of a deceased employee, the finding that the mother was partially dependent upon the deceased, was not supported by the evidence.

(1) Workmen's Compensation Acts, **C. J.,** p. 122, n. 40, p. 123, n. 41.    (2) Workmen's Compensation Acts, **C. J.,** p. 122, n. 40.

PROCEEDING in Certiorari to review an award by the Industrial Accident Commission for death of employee. Award annulled.

The facts are stated in the opinion of the court.

Donald Barker and Harry S. Keithly for Petitioner.

Warren H. Pillsbury for Respondents.

CRAIG, J.—The petitioner is a Nevada corporation conducting a mercantile drug business in this state under the authority of our statutes. On the twenty-fifth day of Oc-

1. Review of facts on appeal under Workmen's Compensation Act, notes, **Ann. Cas.** 1916B, 475; **Ann. Cas.** 1918B, 647; **L. R. A.** 1916A, 178, 266; **L. R. A.** 1917D, 186.

2. Who is "defendant" within Workmen's Compensation Act, notes, **Ann. Cas.** 1913E, 480; **Ann. Cas.** 1918B, 479; 13 A. L. R. 686.

tober, 1923, one Johnson Black, an employee of petitioner, was killed by one of its trucks at Sixth and Main Streets, in the city of Los Angeles. The respondent Lucinda Black thereafter instituted proceedings before said Commission as an alleged dependent of Johnson Black for compensation, and after hearing the evidence she was allowed the sum of $640, $100 of which was awarded on account of funeral expenses. Petitioner applied for a rehearing before said Commission upon the ground that the latter acted in excess of its authority in granting to said dependent more than the sum of $100, which rehearing was denied, and a petition or writ of *certiorari* for review of the proceedings before the respondent Commission having been filed in this court, an alternative writ issued.

The basis of petitioner's complaint is that the evidence does not justify any finding that Lucinda Black was entitled to more than the sum of $100.

It was alleged in the petition for adjustment of claim filed with the respondent Commission that Johnson Black, in the course of his employment, ran to and attempted to mount one of petitioner's trucks while in motion, that he fell to the ground and was crushed by the truck. The respondent corporation denied that Lucinda Black was at the time of the death of said Johnson Black, or during the period of his employment, wholly or to any extent dependent upon him for her support.

It was stipulated that said employee was at the time of the accident receiving $22.50 per week for six days' employment, and that there was no claim of misconduct on his part as a cause of his death; that said employee was accustomed to ride on the company's trucks, though not under instructions to do so.

Respondent Lucinda Black testified that she was the mother of the deceased employee, that she came to Hartford, Connecticut, from Americus, Georgia, in January, 1923; that during the thirty weeks from the latter part of March until the 25th of October, 1923, she had had employment for about twenty weeks at $2.80 per day, six days per week, but that from January until March she worked at that rate but a few days a week; that previously to leaving Georgia she had steady employment at $3 per week and her board; she roomed

with a daughter in Georgia, and entered the home of a married son at Hartford, where she had resided since her arrival there. She testified: "Q. Do you pay any board and room to your son where you live now? A. I don't pay any special amount but I take care of my expenses. When he gets behind with his bills I drop in a little to help out. Q. Does anyone aid you in buying your clothes? A. No; I buy everything myself. Q. Have you any other expenses besides buying your clothes and board and room? A. No more than keeping up my societies." She said that between October 25, 1922, and October 25, 1923, she had received from the decedent $80 in January, $40 in April, and $15 in August, or a total of $135; that the last time he had written her was some time in September, but that he then made no mention of money. She did washing to compensate for her room rent, and when she received money she would put it in her trunk; if asked for a dollar or two she would give it to her children when needed, but she testified that with money sent her by the decedent she also bought two postal savings certificates, and that although the amounts of her earnings and funds sent her by him constituted her only means of support, yet it appears that she paid, and was expected to pay, but little for her domestic accommodations at Hartford.

The Workmen's Compensation, Insurance and Safety Act provides as follows:

"In case the deceased employee leaves no person wholly dependent upon him for support, but one or more persons partially dependent therefor, the said dependents shall be allowed the reasonable expense of his burial, not to exceed one hundred dollars, and, in addition thereto, a death benefit which shall amount to three times the annual amount devoted by the deceased to the support of the person or persons so partially dependent"; and that "If the deceased employee leaves no person dependent upon him for support, the death benefit shall consist of the reasonable expense of his burial, not exceeding one hundred dollars and such other benefit as may be provided by law." (Stats. 1917, p. 917, § 14.)

The respondent Commission based its award upon a finding that Johnson Black had contributed an annual rate of $180 toward his mother's support. As we have, seen her own testimony shows but $135 to have been sent her during the

71 Cal. App.—20

year next preceding his demise, with which she said that she purchased postal savings certificates to the value of $100.

[1] Findings of the Commission will not be disturbed by an appellate court if based upon some evidence, or upon conflicting evidence, but as said in *Pruitt* v. *Industrial Acc. Com.*, 189 Cal. 459, 466 [209 Pac. 31], where there is no evidence to support a finding a review may be had on the theory that the Commission had no jurisdiction to make it. Section 14 (b) of said act provides that the question of dependency "shall be determined in accordance with the fact as the fact may be at the time of the injury to the employee." At the time of this accident Lucinda Black was receiving as wages $16.80 per week, or but $6 per week less than the decedent; she had been earning this amount for twenty weeks, and prior thereto she earned about $84 in ten weeks. It appears from her testimony, without contradiction, that she had at all times resided with a married son or daughter, and that her total expenses for the year, including dues in three societies, amounted to $194.80 less than her earnings. It appears that for a period of two years previously to his death Johnson Black had sent her but $60, and that at the time he died he was not devoting any amount to her *support,* if he ever did so.

In *Spreckels Sugar Co.* v. *Industrial Acc. Com.*, 186 Cal. 256 [199 Pac. 8], it was said: "The whole theory of the compensation act as to death cases is that the dependents of the employee killed through some hazard of his employment shall be compensated for the loss of the support they were receiving from him at the time of his injury. This necessarily means that the death benefit must be computed on the *rate* of contribution at that time. It is the rate which is the measure of the loss, not the gross amount which the decedent has happened to pay through any past year, or through any other period of time." (Italics supplied.)

The supreme court there illustrates the application of the rule by a hypothetical situation where a son commences to contribute to his partially dependent mother the sum of $50 per month, which he continues to do for three months, or perhaps for but one month, when he is killed: "Manifestly the mother's loss of support is fifty dollars a month, or six hundred dollars a year, regardless of how long that support

has been continuing, and compensation for the loss must be upon that basis, and not upon the basis of what the son has actually contributed in the short time the condition of dependency has existed. In the present case the facts as to dependency are merely reversed. A period of total dependency is succeeded by a short period of but partial dependency. During the first period employee has contributed at the rate of $145 a month and during the second at the rate of only forty-five dollars a month. It is plain that the loss of support to the dependents incurred by the employee's death is the latter rate.''

In *Great Western Power Co.* v. *Industrial Acc. Com.,* 191 Cal. 724 [218 Pac. 1009], it was also said: ''The statute in this state, differing in this respect from compensation acts in other jurisdictions, expressly provides that it is not the amount of contributions which shall be the basis of the computation, but it must be three times the annual amount devoted by the deceased to the support of the person or persons so partially dependent. It is the amount actually devoted by the employee to such support that fixes the compensation. The amount, it would seem, must not only be contributed for support, but it must be actually applied wholly to that purpose. It is very easy to conceive of a case, by way of illustration, in which only a small part or portion of what may be contributed will be devoted or applied to support, the rest being placed in bank or invested.'' And quoting with approval from the dissenting opinion in *Milwaukee Basket Co.* v. *Wiecki,* 173 Wis. 391 [181 N. W. 308], the following apt language is incorporated: ''We cannot believe that it was the legislative intent that a father should be permitted to swell his investment account at the expense of an employer of his son, or at the public expense, if it instead of the employer ultimately bears the burden. Neither in popular nor in technical language does the word 'support' connote a meaning common to either 'investment' or 'savings,' and judicial construction should not change its meaning.''

[2] The most that can be said in behalf of the respondents' position here is that Johnson Black on three occasions during 1923 took it upon himself to send a few dollars to his mother with which she might do as she saw fit. That she

asked it, or was in any way dependent upon his contributions, or that he indicated any intention of establishing a precedent, does not appear; in fact, during much of that time she was earning more than five times as much as she had earned before. Aside from the fact that little could be left of the $135 for her support after investing $100 in government certificates and defraying the expenses of transportation from Georgia to Connecticut, she received from her son but $15 in about six months, and there is no evidence whatever upon which to base a rate at the time of the injury.

It follows that Lucinda Black was not partially dependent, and the award is therefore annulled, and the cause remanded to the respondent Commission for further proceedings in accordance with this opinion.

Finlayson, P. J., and Works, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 12, 1925, and the following opinion then rendered thereon:

THE COURT—Upon petition for rehearing it is contended that in the opinion of the court (*ante*, p. 303 [234 Pac. 921]) there are certain inaccuracies in the statement of fact. If, for the sake of argument, it be conceded that this contention is correct, the conclusion reached by us would not thereby be affected.

The petition is denied.