[S. F. No. 9542.  In Bank.—February 25, 1921.]

MOORE SHIPBUILDING CORPORATION (a Corporation), et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—ALLOWANCE TO DEPENDENTS OF DECEASED EMPLOYEE—POWER OF LEGISLATURE—CONSTITUTIONAL LAW.—Under section 21 of article XX of the constitution, authorizing the legislature to enact laws for the compensation of employees for injuries received in the course of their employment, the power of the legislature in allowing compensation for death is not limited to those dependents having a legal or moral claim to support from the employee in his lifetime, but extends to those whose maintenance has been voluntarily and gratuitously assumed.

[2] ID.—DETERMINATION OF DEPENDENTS—MEASUREMENT OF LEGISLATIVE DISCRETION.—The discretion of the legislature to determine what classes of dependents shall come within the workmen's compensation law is not to be measured by the common-law rules of kinship, inheritance, and liability for maintenance and support, or by the limitations of compensation acts in force at the time of the adoption of the constitutional provision authorizing such law, since the benefits of the law are not provided as an indemnity for negligent acts committed or as compensation for legal damages sustained, but as an economic insurance measure to prevent a sudden break in the contribution of the worker to society, by his accidental death in the course of his employment.

[3] ID.—DEPENDENCY OF UNRELATED MINOR CHILD—MERETRICIOUS RELATIONSHIP BETWEEN EMPLOYEE AND MOTHER—MEMBER OF HOUSE-

1.  Who are "dependents" within the meaning of the compensation statutes, notes, Ann. Cas. 1913E, 480; Ann. Cas. 1918B, 479; L. R. A. 1916A, 121, 248; L. R. A. 1917D, 157; L. R. A. 1918F, 483.

HOLD.—A minor neither naturally nor legally related to a deceased employee is a dependent member of his family or household in good faith within the meaning of section 14 (c) of the Workmen's Compensation Act, where the minor, her mother and the employee lived together until the death of the latter, and he in good faith supported the minor, notwithstanding the relations between the employee and the mother were meretricious and they were cognizant thereof.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission.    Denied.

The facts are stated in the opinion of the court.

E. L. Stockwell and Redman & Alexander for Petitioners.

A. E. Graupner and Warren H. Pillsbury for Respondents.

SLOANE, J.—This is a proceeding to review the action of the Industrial Accident Commission in awarding a death benefit of three thousand four hundred dollars to one Ida Miller for total dependency as a dependent of Albert Bauer, an employee accidentally killed in the service of the plaintiff, Moore Shipbuilding Corporation.

The only question in dispute is the status of Ida Miller as a dependent member of the "family or household" of the decedent.

The admitted facts disclose that for a year or more preceding his death decedent, Albert Bauer, was living in adulterous cohabitation with Lola Miller, the undivorced wife of one Samuel Miller. Ida Miller, who at the time of Bauer's death was three years of age, is the daughter of Lola and Samuel Miller. Miller deserted his wife just prior to the birth of the child and has not been heard from since. Bauer, an unmarried man, appeared on the scene as a friend of Mrs. Miller and the child soon after the latter's birth. He contributed to the support of the mother and daughter for a year or more before he and the mother began living together, and frequently sent them by mail remittances of money addressed to the little girl. Later, at Bauer's solicitation, Mrs. Miller, with her little daughter, came to live with him. Thereafter, the couple lived together ostensibly as man and wife with Ida as their putative

daughter, and Bauer, until his death, supported both the mother and child, and by his conduct and declarations indicated his purpose to rear and care for Ida as if she was his own daughter. The evidence would justify the conclusion that it was his intention that the relation should be permanent.

The claims of the mother as a dependent of the deceased were disposed of before the Industrial Accident Commission by stipulation between the parties to this proceeding, and the only relevancy on this appeal of the relations between her and Bauer is as to the effect of their unlawful cohabitation upon the status of the child as being a member in good faith of decedent's household.

[1] The first point to be considered in its logical relation to the case is the objection raised to the power of the legislature under the constitution of California to enact into the workmen's compensation law provision for an allowance to dependents of a deceased employee not connected with him by either legal or natural ties. (Stats. 1917, p. 831.)

The constitutional authority for the enactment of a workmen's compensation law in this state is provided by section 21 of article XX of the constitution, and so far as pertinent to the matter before us is comprised in the words: "The legislature may by appropriate legislation create and enforce a liability on the part of all employers to compensate their employees for any injury incurred by the said employees in the course of their employment irrespective of the fault of either party." That this provision must be construed to empower the legislature to extend compensation in the event of death of such employee to certain dependents is not questioned by petitioners, but they contend that such allowance must be limited to dependents having a legal or moral claim to support from the employee in his lifetime.

The basis for a construction upholding allowances to surviving dependents is that in authorizing a Workmen's Compensation Act the constitutional provision is presumed to have been adopted to cover the whole scope and purpose of the workmen's compensation laws as commonly enacted and in force at the time of its adoption. That under the general scheme of such laws death benefits to dependents are commonly recognized is conceded.

This construction of section 21 of article XX of the California constitution is fully upheld in *Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407, [Ann. Cas. 1917E, 390, 156 Pac. 491]. In the carefully considered opinion in that case by Mr. Justice Sloss, concurred in by a majority of the court and with concurring opinions by Chief Justice Angellotti and Mr. Justice Shaw, it is declared that ''the constitutional amendment, as is perfectly apparent from its terms, was designed to establish the authority of the legislature to pass laws making the relation of employer and employee subject to a system of rights and liabilities different from those prevailing at common law. The system was one which had already been adopted in many jurisdictions. The statutes putting it into force were commonly known as workmen's compensation laws. In every one of those laws provision was made not only for compensation or indemnity to an employee who survived his injury but for payment to the heirs or dependents of an employee who had received a fatal injury. The two kinds of payment have always been regarded as component parts of a single scheme of rights and liabilities arising out of a given relation.''

The power of the legislature to provide for dependents being established, the question that follows is as to the legislative discretion in determining what classes of dependents shall come within the law.

If we are to be governed in this respect by the common-law rules of kinship, inheritance, and liability for maintenance and support, it will at once appear that the claimant here is outside the pale of legislative recognition; but as is said in *Western Metal Supply Co.* v. *Pillsbury, supra,* the workmen's compensation system ''was designed to establish the authority of the legislature to pass laws making the relation of employer and employee subject to a system of rights and liabilities different from those prevailing at common law''; and again, that ''the analogies of the common law cannot be applied too closely to this new scheme which undertakes to supersede the common law altogether and to create a different standard of rights and obligations.'' The supreme court of Connecticut, in holding an illegitimate child entitled to the benefits of the act, thus defines the scope and purposes of the new system of relation between employer and employee: ''Compensation is not awarded

either as the price of fault or as a measure of duty owed
to the injured employee. . . . The underlying principle of
this kind of legislation is that the ends of justice and equity
will best be subserved and the general good promoted by
lifting from the shoulders of the unfortunate victims of in-
dustrial mishaps and of their dependents some measure of
the resulting burden, and casting it upon the industry which
occasioned it and, through that industry, upon society at
large. . . . In its final distribution society bears it.    These
children and all other children similarly circumstanced,
. . . must be supported.    If their means of support is with-
drawn, society is compelled to supply it.    Why may it not
as well and fairly supply it in the method provided by
the workmen's compensation legislation as in any other?''
(*Piccinim* v. *Connecticut L. & P. Co.*, 93 Conn. 423, [106
Atl. 330].)

In *Temescal Rock Co.* v. *Industrial Acc. Com.*, 180 Cal.
637, [182 Pac. 447], this court has upheld an award under
the precise provisions of the Workmen's Compensation Act
that is involved here, to a woman who was living with
the decedent as his wife, without having been married to
him.    It is true that they thought they were married and
had sustained this relation in good faith.    But their honest
intentions in the matter did not remove the fact that their
relations were illegal and wholly without the sanction of
the law.    The decision holds that the claimant could not take
as the wife of the deceased employee, but that she was en-
titled to an allowance as a member in good faith of his fam-
ily and household.    The court says: "If the applicant is
a member of the family or household of such employee in
good faith, compensation may be awarded although he or
she may not bear any relation, by adoption, blood, or mar-
riage, to the employee.''

In *Maryland Casualty Co.* v. *Industrial Acc. Com.* (S. F.
No. 9218), involving liability under a state of facts sub-
stantially like those existing in this case, this court denied a
petition for writ of review, which circumstance is, of
course, not conclusive as to the point under discussion
because, as suggested by counsel for petitioners here, we
have consented to review the proceedings in this matter.
We see no reason, however, for arriving at a different con-
clusion from the one implied in the denial of a writ under

that petition. The need of relief from the deprivation caused by the death of the employee and the questions of public policy involved rest upon the fact that the employee has in good faith taken into his home and assumed the support of one without other means of subsistence. The hardship to the individual dependent and the incidental burden to the insurer or to society from the death of a bread-winner are no different whether the maintenance of the dependent has been voluntarily and gratuitously assumed, or legally imposed.

As has been pointed out, the benefits of this law are not provided as an indemnity for negligent acts committed or as compensation for legal damages sustained, but is an economic insurance measure to prevent a sudden break in the contribution of the worker to society, by his accidental death in the course of his employment. From this economic standpoint it makes no difference whether the workman's earnings are being distributed to those whose support he has voluntarily assumed, or to those who are legally entitled to such support. In either case they are the reliance of dependent members of society. The only difficulty is that where there is no legal dependence it is harder to determine that the contribution of support has been made so as to constitute the recipient a dependent in good faith.

[2] The power of the legislature to extend the benefits of industrial accident insurance beyond the wage-earner himself being recognized, it is left to reasonable legislative discretion in the light of the general purposes of these laws to determine what dependents shall become the distributees of the indemnity assessed against the industry, and we do not think we are compelled to look to analogies of the common law, or to the limitations of compensation acts in force at the time our constitutional provision was adopted, to fix the measure of the legislative power thus conferred.

It only remains to determine whether Ida Miller, the claimant here, comes within the terms of the California statute.

Section g, subdivision 11 (1) and (2) of the Workmen's Compensation Act provides that "in case a deceased employee leaves a person or persons wholly dependent upon him for support" such dependents shall be allowed certain indemnity benefits. Section 14 (a) provides that the wife

and children under certain conditions are conclusively presumed to be wholly dependent. Section 14 (b) provides that in all other cases the questions of entire or partial dependency and questions as to who constitute dependents, and the extent of their dependency shall be determined in accordance with the fact, "as the fact may be at the time of the injury of the employee"; 14 (c) provides that "no person shall be considered a dependent of any deceased employee unless in good faith a member of the family or household of such employee, or unless such person bears to such employee the relation of husband or wife, child, posthumous child, adopted child or stepchild, father or mother, father-in-law or mother-in-law, grandfather or grandmother, brother or sister, uncle or aunt, brother-in-law or sister-in-law, nephew or niece."

The two classifications here, one of persons who are in good faith members of the employee's family or household, and the other of persons having specific relations of kinship, are clearly used in the alternative and are to be separately considered (*Temescal Rock Co.* v. *Industrial Acc. Com.*, *supra*). As Ida Miller belongs to none of these degrees of relationship either by birth, marriage, or adoption, we are only concerned with the first division.

There are three vital conditions required to establish dependency in this case under the compensation act: First, was Ida Miller actually dependent upon the decedent for her support; second, was she a member of his family or household; third, was the relation or connection sustained in good faith.

The Industrial Accident Commission has found on these points as follows: That "Ida Miller, a minor, was at the time of the injury of Albert Bauer, referred to in said findings, totally dependent in fact upon him and was a member of his family and household within the meaning of section 14 of the Workmen's Compensation, Insurance and Safety Act of 1917." Under the provision of the act making the findings of fact of the commission conclusive on this court, the fact of total dependency, and that the relation of the child to decedent's household existed in good faith, must be accepted as established.

[3] The only question open to discussion is whether as a matter of law the relation shown by the undisputed evi-

dence constitutes *bona fide* membership in a "family or household" on the part of the claimant. There is little to be gained by reviewing the numerous definitions given by the courts and lexicographers of the words "family" and "household." They mean different things under different circumstances. The family, for instance, may be an entire group of people of the same ancestry, whether living together or widely separated; or it may be a particular group of people related by blood or marriage, or not related at all, who are living together in the intimate and mutual interdependence of a single home or household. Again, the word "household" is variously used to designate people, generally, who live together in the same house, including the family, servants, and boarders, or it may be used as including only members of the family relation. It is probable that the two terms are coupled together in this statute to indicate that they are used synonymously, the "family" to include only those of the household who are thus intimately associated, the "household" to exclude those of the family not living in the home. There can be no doubt that Bauer, Mrs. Miller, and the little girl constituted a family or household. They were living together in all the interdependency and intimacy of man and wife and their legitimate offspring. The only thing to exclude Mrs. Miller from the benefit of this relationship was lack of good faith. She and Bauer were living together in open and conscious defiance of law. In *Temescal Rock Co.* v. *Industrial Acc. Com.*, *supra*, a similar state of facts existed as to the unlawful relation, but the court there held the man and woman to constitute a "family or household" and that they were such in good faith because they were cohabiting under the belief that they were married. In this case Bauer and Mrs. Miller were not in good faith because they knew their relations were unlawful. We cannot, however, agree with counsel for petitioners that the bad faith of the mother must be imputed to the child. It is true that for many purposes the status of the parents fixes that of their minor children. It may be conceded that such is the law in the matter of domicile, but, as we have seen, so far as her domicile is concerned, Mrs. Miller was also a member of Bauer's household. But the bad faith of Bauer and Mrs. Miller in their relations with each other cannot rebut entire

good faith in the act of Bauer in assuming the maintenance and support of the child and accepting her as a member of his family. He might have adopted her and thus made her a legal dependent, but the meretricious relations between him and Mrs. Miller would have remained the same. This suggestion answers the claim made by petitioners that there could be no family relation to include the child while the mother was living in adultery with Bauer, for the reason that the law would take the child from them and make her a ward of the juvenile court. So it could, if there had been a legal adoption, or if Bauer was the father of the child. It may be plausibly urged that if the evidence showed that Bauer was only maintaining the daughter in furtherance of his illegal relations with the mother, it would follow that he was making her a member of his household in bad faith, but the commission has found, and we think the facts justify the conclusion, that Bauer had in good faith assumed the support of Ida Miller and made her a member of his household for her own sake and because of personal care for her. It is true the child was too young to entertain either good or bad faith, but if that is a legal obstacle, it would apply as well if she had been taken into the household as a homeless and abandoned waif. We think that Ida Miller was a member in good faith of Bauer's household. The courts should not be called upon to visit the iniquities of the parents upon the children, beyond the penalties inherent under natural law.

The petition is denied.

Lennon, J., Angellotti, C. J., and Lawlor, J., concurred.

OLNEY, J., Concurring.—I concur in what Judge Sloane has said, and would add merely a word. It seems to me that in view of the finding of the commission that Bauer had assumed the relation of father toward the child, the character of his relations with the child's mother is a false quantity in the case. The final question was, Did Bauer stand *in loco parentis* toward the child, had he genuinely assumed toward the child the relation of father? If he had (and the commission finds he had and the finding is supported by the evidence), it makes no difference how or why he had. The relation was there and by virtue of it the

child was a member of his household in good faith, and that is enough. If an unmarried man should pick up some waif, become attached to it, have it live with him, support it and look after it, assume toward it in every way the character of a father, could anyone seriously doubt that it was a dependent member of his household? If it would be a dependent member of his household under those circumstances, how is the relation changed or affected by the fact that it originated in an unlawful relation with the child's mother? That fact might have some weight in determining whether he had genuinely assumed the relation of father toward the child, but if it appeared that he had, the reason or reasons why he had done so become wholly unimportant.

WILBUR, J., Dissenting.—I dissent.

In the case of *Temescal Rock Co.* v. *Industrial Acc. Com.,* 180 Cal. 637, [182 Pac. 447], the parties believed in good faith that the procurement of a marriage license constituted them husband and wife and in good faith entered upon that relation. Under the common law and in this state prior to 1895, such acts would constitute them husband and wife. Only a mistake of law prevented such conduct constituting a valid marriage. There was no moral turpitude in the conduct of the parties and they did not discover the invalidity of the marriage before the putative husband was killed, in such a case there was no injustice in giving validity to the actual *bona fide* intention and relationship of the parties.

In the case of *Maryland Casualty Co.* v. *Industrial Acc. Com.,* the commission had allowed compensation to two minor children whose mother had married the decedent and who he apparently believed to be his wife. The children were being supported by the deceased as members of his family. After his death it was discovered that the mother of the children had married decedent the day before an interlocutory decree of divorce had been entered in an action for divorce against the husband and father of the children. The mother claimed that she entered into the relationship in good faith, although the commission found otherwise. The petition for a hearing in this court was denied. Whatever force that denial may have as a precedent, it does not cover a case where the employee deliberately enters upon an adul-

terous cohabitation with the wife of another man. Such a relationship violates the law of God and man. (Deut. v, 18; Matt. v, 27, 28; Pen. Code, 269a.) The woman and child were the family of another man. How can it be said that a family altar had been erected in good faith? It is one thing to hold that parties may establish a family in good faith where both are acting under a mistake of law, and quite another to hold that a family may be established where both the man and woman deliberately assume the family relationship in conscious violation of the criminal law and where such conduct is *malum in se.* Indeed, the commission found that such relationship was not in good faith and consequently disallowed compensation to the woman, except five hundred dollars as stipulated. The question, then, is whether the infancy of the child can justify an allowance to it where the two adult parties to the relationship were not acting in good faith in establishing the relationship. In other words, can the good faith of the child, or rather its lack of bad faith, characterize the family as one existing in "good faith," sufficiently to cover the bad faith of the mother and of the employee? To so hold would, in effect, strike out the words "good faith" from the statute. For assuredly the intent of the minor child could not be determinative of the case. The support of the child was, no doubt, a mere incident to the meretricious relationship, and we may well assume one of the considerations moving from the man to the woman for her continuance of the relationship.

To assume that the legislature, in the enactment of the Workman's Compensation Act, intended to reward parties to a relationship entered into in defiance of the penal laws of the state and against good morals is to violate the most fundamental canons of statutory construction. It should be said, however, that the commission found that the husband of Mrs. Lola Miller died before she began to cohabit with the deceased. Presumably this finding is the result of the application of the presumption of innocence, but is in opposition to her statement that they intended to get a divorce.

Whatever may be said as to the rights of a child taken into the home with a *bona fide* intent to continue its support, coupled with actual support for a long time, it seems clear that where the consent of the child's mother to a crim-

inal relationship is an essential element in such conduct, such a family or household is not established in good faith, and the child is not a member of decedent's family in good faith.    Our previous decisions in favor of those who ignorantly violate statute law have, I think, gone to the utmost limit in liberality in favor of the employee's family and against the employer.

Shaw, J., concurred.

Rehearing denied.

All the Justices concurred, except Shaw, J., and Wilbur, J., who voted for rehearing.