RUSSELL ET AL. *v.* JOHNSON ET AL.

[No. 16,965. Filed June 17, 1942. Rehearing denied October 21, 1942.]

254

[For opinion of the Supreme Court reversing the judgment of the Appellate Court as to Lorrine Harrison (Russell) and affirming it as to Lance and Jacequeline Harrison (Russell), see 220 Ind. 649.]

*Leon Kowalski* and *Henry L. Humrichouser,* both of South Bend, for appellants.

*Vitus G. Jones, Roland Obenchain, Paul M. Butler,* and *Francis Jones,* all of South Bend, for appellees.

BEDWELL, J.—This appeal presents the question of whether the appellants are entitled to compensation under the Workmen's Compensation Act of Indiana as dependents of John Russell, deceased.

A majority of the full Industrial Board made a finding and an award denying them compensation as dependents and they have appealed and have assigned, first, that the award of the full board is contrary to law; second, that the award of the full board is contrary to the evidence.

The facts are without dispute and are as follows:

The appellant Lorrine Russell, whose correct name is Lorrine Harrison, was married to Lance Harrison at Benton Harbor, Michigan, on January 9, 1927. To this marriage two children were born, namely, Lance Harrison and Jacqueline Harrison, who are named as appellants herein by the names of Lance Russell and Jacqueline Russell. Lance Harrison was born on January 25, 1931, and Jacqueline Harrison on May 7, 1932. About a month after the birth of Jacqueline, and because the husband did not remain at home and buy any food or support the family, Lorrine Harrison took her two children and went to live with an aunt in East St. Louis where she remained about two years and then returned to the home of her father at Eau Clair, Michigan. Mrs. Harrison had known John Russell when she was a child in Union City, Tennessee. In 1935 he came to the home where she was living and asked her and the two children to come to South Bend, Indiana, and live with him. This they did and from 1935 until the death of John Russell on October 22, 1940, with the exception of about three months, they lived together in one home. In South Bend, appellant Lorrine Harrison, used the name of Lorrine Russell and was considered in the community where she lived to be the

wife of John Russell. Her children took the name of Russell and went to school under such name. Her father came from Michigan and lived with them in the same household. During all the time appellant Lorrine Harrison and her two children lived with John Russell he furnished their sole and only means of support. His wages were turned over to her and used by her in paying house rent, buying groceries and clothing, and supporting the family.

In the summer of 1940, Lorrine Harrison took her two children and went to Chicago and lived about three months with her husband Lance Harrison. She went to her lawful husband because he had requested her to return, and because of the children; but after she went to him in Chicago he failed to support her and the children, and she left because he didn't give them any food or clothing; and returned to the home of John Russell who furnished her money to return from Chicago to South Bend. Lorrine Harrison testified that her husband, Lance Harrison, had another woman, with two children, in Chicago when she went there to live with him. She was living with John Russell and he was supporting her and her two children on October 21, 1940, when he, while in the employ of the appellee, Rieth-Riley Construction Company, suffered an injury as a result of an accident arising out of and in the course of his employment from which he died on October 22, 1940. The evidence disclosed that Lorrine Harrison during all the period mentioned lived in adultery with John Russell; that upon at least one occasion while she was so living, her husband, Lance Harrison, visited at the home and remained all night and knew of the relationship between his wife and John Russell. There is no evidence that he made any objection thereto. There is no evidence whatever of any support furnished any

of appellants by Lance Harrison, the husband and father, after the birth of Jacqueline Harrison in 1932.

All facts, except the fact of dependency, were stipulated, and the sole question for determination is whether the appellants, Lance Harrison and Jacqueline Harrison, named herein as Lance Russell and Jacqueline Russell, are entitled to compensation as dependents of John Russell, deceased. Their mother, Lorrine Harrison, did not appeal to the full Industrial Board from a finding and award of the hearing member denying her compensation, so no question is presented for determination as to her dependency, and appellants are making no claim that she is entitled to recover as a dependent of John Russell.

The appellees who bear the name of Johnson are relatives of John Russell who filed a claim for compensation as his dependents. The hearing member and the full Industrial Board found that they were not dependents; but because their claim was consolidated with the claim of appellants they are named as appellees herein.

The question for determination is one of first impression in this jurisdiction. While similar facts have been presented for determination in a few cases in other jurisdictions, the decisions of the courts therein are not in harmony. The statutes defining "dependency" under the compensation laws of the various states vary in terms. The portion of our own statute which has a bearing upon the question here for determination reads as follows:

"DEPENDENTS.—The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee:

"(a) A wife upon a husband . . . .

"(b)  A husband, who is both physicially and financially incapable of self-support, . . . .

"(c)  A child under the age of eighteen (18) years upon the parent with whom he or she is living at the time of the death of such parent.

"(d)  A child under eighteen (18) years upon the parent with whom he or she may not be living at the time of the death of such parent, but upon whom, at such time, the laws of the state impose the obligation to support such child.

"(e)  A child over the age of eighteen (18) years who is either physically or mentally incapacitated from earning his or her own support, upon a parent with whom he or she is living at the time of the death of such parent, or upon whom the laws of the state, at such time, impose the obligation of the support of such child.

"As used in this section, the term 'child' shall include stepchildren, legally adopted children, posthumous children and acknowledged illegitimate children, but shall not include married children; the term 'parent' shall include step-parents and parents by adoption.

"In all other cases, questions of total dependency shall be determined in accordance with the fact, as the fact may be at the time of the death, and (the) question of partial dependency shall be determined in like manner as of date of the injury. . . ." Acts of 1929, ch. 172, § 38, p. 536, § 40-1403, Burns' 1940 Replacement.

The appellant children do not fall within the terms of subdivisions (c) or (d) or (e). If they are entitled to compensation as dependents their right must arise because of the above quoted paragraph of the section making dependency determinable in accordance with the fact, "in all other cases."

In the case of *In re Carroll* (1917), 65 Ind. App. 146, 153, 154, 116 N. E. 844, this court was called upon to determine certain questions of dependency under section 38 of the original Workmen's Compensation Act

of 1915 (Acts of 1915, p. 392), which contained this provision:

"In all other cases, questions of dependency, in whole or in part, shall be determined in accordance with the fact, as the fact may be at the time of the injury; . . ."

This court in construing the meaning and affect of such clause says:

"Our act does not define dependency, and does not specifically indicate who are dependents, except as to persons included within the conclusive presumption of total-dependency features of the act. Courts as a rule, in determining questions of dependency and who are dependents, resort to description, to an outlining of the elements rather than to definition. Stated generally, a dependent is one who looks to another for support and maintenance; one who is in fact dependent; one who relies on another for the reasonable necessities of life. . . .

"Among the elements that are *indicia* of a state of dependency are: an obligation to support; the fact that contributions have been made to that end; that the claimant in any case is shown to have relied on such contributions and their continuing; and the existence of some reasonable grounds as a basis for probability of their continuance or of a renewal thereof if interrupted. We would not be understood as indicating that all these elements must exist in each case in order that there may be a state of dependency. As a rule, to which there are exceptions, however, the fact that contributions have been made is an essential element of a state of dependency within the meaning of the act."

In the case of *Welch* v. *Welch Aircraft Industries, Inc.* (1941), 108 Ind. App. 545, 551, 29 N. E. (2d) 323, this court construes section 38, ch. 172, p. 536, of the Acts of 1929 (§ 40-1403, Burns' 1940 Replacement), and in particular subdivision (c) heretofore quoted, and in the course of such opinion it says:

"This subdivision creates a conclusive presumption of total dependency in favor of a child under 18 years of age upon the parent with whom he or she is living at the time of the death of such parent without regard to the existence of a legal obligation on the part of a surviving parent to support such child or without regard to the fact that the child is being supported either wholly or partially by another. Consequently the legal obligation to support is not determinative of the question of dependency of persons included in subdivision (c).

"The purpose of the Workmen's Compensation Act is to provide for the dependents of an employee who accidentally meets with injury or death in the employment, and to accomplish the beneficent purpose intended, the law should be given a broad rather than a narrow construction."

To the same affect that the Workmen's Compensation Act should receive a practical and liberal construction, especially in determining questions of dependency, see *Weil-Kalter Mfg. Co.* v. *Industrial Com.* (1941), 376 Ill. 48, 32 N. E. (2d) 889.

So in the case of *Wilson* v. *LaPorte Gas & Elec. Co.* (1939), 107 Ind. App. 21, 22 N. E. (2d) 882, it was held by this court that step-children under eighteen years of age who were living with the step-father in his household, were conclusively presumed to be his dependents upon his death, notwithstanding the fact that their natural father contributed regularly to their support. Upon the authority of such decision, and other decisions cited therein, we do not believe that appellant children are precluded from recovering compensation in this action because of the fact that their natural father was living, and the laws of this State imposed upon him the obligation of supporting them.

In the examination of precedents in other jurisdictions, our attention has been called to *Moore's Case*

(1936), 294 Mass. 557, 3 N. E. (2d) 5. In that particular case a mother and her minor children lived with the deceased employee and at the time of his injury and death they were totally dependent upon him for support. The mother was cohabiting with the deceased employee and maintained illicit relations with him for a period of years; but during all that time her husband, who was at least the legal father of such children, was alive. The Massachusetts statute defines "dependents" as "members of the employee's family or next of kin who were wholly or partly dependent upon the earnings of the employee for support at the time of the injury." The children were not of kin of the employee and the question for determination was whether they were entitled to recover as dependent members of his family. The court held that in the particular case the evidence did not show that the children were members of the family of the deceased employee. In its opinion the court says at p. 561:

> "The evidence in the case, considered in its aspect most favorable to the claimants, does not go further than to show that the employee was a boarder in the household paying the mother of the claimants by his earnings for his board and for his illicit relations with her, and that the claimants were supported by their mother with money so obtained by her. The evidence does not show that the household in which the employee lived was his family— a family of which he was the head—rather than the family of William or Mary Lacey."

William Lacey was the natural father of the children and Mary Lacey was his wife who was living with Terrence Moore, the deceased employee.

Under the Workmen's Compensation Law of Ohio, "dependents" are limited to members of the family of deceased, or to a spouse, lineal descendant, ancestor, brother, or sister.

In the case of *Welsh* v. *Indus. Comm.* (1940), 136 Ohio St. 387, 26 N. E. (2d) 198, a woman who was the lawful wife of a man by the name of Salisbury had been and was at the time of his death living with an employee named Jack Welsh. She had a son whom she testified was begotten by Jack Welsh, but she named the son Salisbury and his birth certificate carried that name. Compensation was sought for such son as a dependent of Jack Welsh. The court held that the facts could not he so construed as to make the claimant a member of the family of Jack Welsh within the contemplation of the provisions of the Workmen's Compensation Law, and that the obligation of supporting the claimant was upon Salisbury; that the wife and the child of Salisbury constituted Salisbury's family. The court said at p. 395:

". . . Of course, one may voluntarily live with and support another man's family and, if he choose, assume that personal liability; but he cannot thereby appropriate them as dependents so as to affect their status under the Workmen's Compensation Law, or creat any liability against that fund."

It might be mentioned that members of the court were sharply divided and that three of the seven members dissented from that portion of the opinion which determined that such child was not a dependent of the deceased employee.

The decisions in both Massachusetts and Ohio are grounded upon the fact that the children were not members of the family of the deceased employee rather than upon the fact that they were not dependent, in fact, upon him for support.

In the case of *Moore Shipbuilding Corp.* v. *Industrial Acc. Com.* (1921), 185 Cal. 200, 196 P. 257, 13 A. L. R. 676, the Industrial Accident Commission of Cali-

fornia awarded compensation to Ida Miller as a total dependent of Albert Bauer, a deceased employee. The admitted facts disclosed that for a year or more preceding his death Albert Bauer was living in adulterous cohabitation with Lola Miller, the undivorced wife of one Samuel Miller; and that Ida Miller, who at the time of Bauer's death was three years of age, was the daughter of Lola and Samuel Miller. Miller had deserted his wife just prior to the birth of his child, and Bauer, an unmarried man, soon after the child's birth, began living with her mother, and supported her and her daughter both before and after he lived with her. The couple lived together as man and wife with the child as their putative daughter, and by his conduct and declarations he indicated his purpose to rear and care for the child as if she were his daughter. The court in affirming the allowance of compensation to the child holds that she was a member of the family or household and was actually dependent upon the decedent for her support; and that the relation of the child as a member of the household was sustained in good faith. In the course of its opinion the court says at p. 205, 207:

"... the benefits of this law are not provided as an indemnity for negligent acts committed or as compensation for legal damages sustained, but is an economic insurance measure to prevent a sudden break in the contribution of the worker to society, by his accidental death in the course of his employment. From this economic standpoint it makes no difference whether the workman's earnings are being distributed for those whose support he has voluntarily assumed, or to those who are legally entitled to such support. In either case they are the reliance of dependent members of society.
. . .

"... There can be no doubt that Bauer, Mrs. Miller, and the little girl constituted a family or household. They were living together in all the interdependency and intimacy of man and wife and

their legitimate offspring. The only thing to exclude Mrs. Miller from the benefit of this relationship was lack of good faith. She and Bauer were living together in open and conscious defiance of law. . . . But the bad faith of Bauer and Mrs. Miller in their relations with each other cannot rebut entire good faith in the act of Bauer in assuming the maintenance and support of the child and accepting her as a member of his family. He might have adopted her and thus made her a legal dependent, but the meretricious relations between him and Mrs. Miller would have remained the same. This suggestion answers the claim made by petitioners that there could be no family relation to include the child while the mother was living in adultery with Bauer, . . ."

In one of the concurring opinions one of the judges says at p. 209:

"If an unmarried man should pick up some waif, become attached to it, have it live with him, support it and look after it, assume toward it in every way the character of a father, could any one seriously doubt that it was a dependent member of his household? If it would be a dependent member of his household under those circumstances, how is the relation changed or affected by the fact that it originated in an unlawful relation with the child's mother?"

Two of the seven members of such court dissented from the majority opinion.

In the case of *L. E. Myers Co.* v. *Noland* (1928), 222 Ky. 748, 2 S. W. (2d) 387, minor children of Mary Noland sought to recover compensation as dependents of James Bell, a deceased employee. About ten years prior to the accident which caused the death of Bell, the mother of the children began living with Bell. She was never divorced and her husband was living at the death of Bell. At the time that the mother began living with Bell there were three of the children, the oldest

of whom was about five years old; and during all the years up to the death of Bell he supported the mother and the children who looked upon him as their father. Their father did nothing for them. The court affirms an allowance of compensation for the children upon the authority of *Jones* v. *Louisville Gas & Electric Co.* (1925), 209 Ky. 642, 273 S. W. 494. In such case a child under the age of sixteen years lived in the household of an employee who was living with a woman to whom he was not married. The child was dependent upon the employee for support at the time of his death. In its opinion the court says at p. 647:

". . . The protection of childhood is one of the purposes of the statute. The deceased had taken this child into his home. He was her god-father. At the death of her father he promised him that he would take care of and provide for her. Her mother was then dead and she had no other protector; she was then a child of tender years; he had faithfully carried out his promise to her father until his death. There would probably be no objection to her claim but for the illicit relation between him and Florence Jones. But the child is not to be charged with this and she is entitled to the protection of the statute as any other child would be under like circumstances, living in the household of and actually dependent upon the injured employe."

In the case of *Memphis Fertilizer Co.* v. *Small* (1930), 160 Tenn. 235, 22 S. W. (2d) 1037, the claim for compensation was filed by an alleged common-law wife and her six-year old daughter. The claim of the alleged wife was disallowed but that of the child was approved. The deceased workman and the mother of the child were never married but they had lived together for eleven months as though they were man and wife and as though the child was the daughter of the deceased workman. He supported both the mother and the child and

many of the neighbors thought them to be his wife and child. The court held that dependency and not relationship was the test of the right to compensation and that the six-year-old child having made her home with the deceased workman for a year, during which time she was wholly supported by him, that she was entitled to compensation even though she was unrelated to him by kinship. In denying compensation to the mother the court said at p. 238:

> "We are of the opinion that the Legislature did not intend to provide compensation for a woman who was purposely and knowingly living in unlawful cohabitation with an employee at the time of his death. In the absence of an express provision to that effect, we would be unwilling to extend the act to such a person as a matter of public policy."

In those states where the statutes require the child to be not only dependent in fact upon the deceased employee, but also a member of his family or household, there are logical reasons for denying compensation to the child as a member of the employee's family or household where the mother has been living in adultery with the deceased employee.

As was said in a dissenting opinion in *Moore Shipbuilding Corp.* v. *Industrial Acc. Comm., supra,*

> ". . . .it does not cover a case where the employee deliberately enters upon an adulterous cohabitation with the wife of another man. Such a relationship violates the law of God and man. (Deut. v, 18; Matt. v, 27, 28; Pen. Code, 269a.) The woman and child were the family of another man. How can it be said that a family altar had been erected in good faith? It is one thing to hold that parties may establish a family in good faith where both are acting under a mistake of law, and quite another to hold that a family may be established where both the man and woman deliberately assume the family relationship in conscious violation of the criminal law and where such conduct is *malum in se.*"

But we are not dealing with a statute where there is a limitation requiring the claimed dependent to be a member of the deceased employee's household or family, or one that requires good faith in the establishment of the family relationship. We are not impressed with the zeal of the insurance carrier in proclaiming the tenets of morality for the purpose of preventing minor innocent children from being declared dependents. We think their rights should be measured and determined by the language of the statute and not by the crime or immorality of their mother. No one can effectively deny that under the facts in this cause these minor appellants were dependent in fact upon the deceased employee for the necessities of life. We are not impressed by the argument that the deceased employee furnished the money to their mother, and that their mother used it to obtain the necessities of life. The source of their support remain the earnings of the deceased employee.

For us to deny the right of the minor children to recover in this action requires us to place limitations upon the plain wording of the statute, and there is nothing in the statute that justifies such limitations. It is appellees' contention that the statute cannot be extended to include as dependents, persons who are not related by blood, marriage or adoption to the deceased employee. We find nothing in the particular section, or in the statute as a whole, which requires this limitation. If the Legislature had intended that dependents "in all other cases" be so limited, or limited to the members of the employee's household or family, it would have so declared.

The award of the full Industrial Board is reversed and cause is remanded with direction to enter an award in favor of the appellants Lance (Russell) Harrison

and Jacqueline (Russell) Harrison, in accordance with this opinion.

NOTE.—Reported in 42 N. E. (2d) 392.