564

ASSOCIATED INDEMNITY CORPORATION (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, GERALD POLLINGER, a Minor, etc., et al., Respondents.

Mullen & Fillippi for Petitioner.

Everett A. Corten, T. Groezinger and Daniel C. Murphy for Respondents.

VAN DYKE, P. J.—Elizabeth S. Ritchie filed an application with the respondent commission for adjustment of claim on behalf of herself and Gerald Pollinger, a minor, and grandson of Elizabeth. `Both claimed as dependents of Sydney E. Braden who was accidentally killed in the course and scope of his employment. Petitioner, as insurance carrier for the

employers, contested the claims upon the ground that neither applicant was a dependent of Braden. Respondent denied the application of Elizabeth and awarded a $7,000 death benefit to Gerald. Elizabeth has not sought a review, but petitioner seeks a review of the order granting the award to Gerald.

The facts are these: Gerald, who was 13 years of age at the time of Braden's death, was the son of Joseph and Elizabeth Pollinger, who at all times herein material resided in New Jersey. They had a family of four children, including Gerald; and Joseph was steadily employed, earning about $90 a week. Gerald from infancy had been afflicted with rheumatic fever and his health had been bad. Medical advice had been given that the climate of California, where his maternal grandmother, Elizabeth, resided, would be beneficial, and Elizabeth journeyed to New Jersey with the idea of bringing him to California. She had been living with Braden in meretricious relationship, which fact was unknown to Gerald and his parents until after Braden's death. She and Braden had publicly assumed the relationship of husband and wife. Both were unmarried. When Elizabeth returned from New Jersey she brought Gerald with her under an arrangement with his parents that he would stay with her for an indeterminate period, with the hope that the California climate would cure his affliction. While he was here he was to be supported by Elizabeth, and this for the reason that, although his parents could provide for him at the family home, yet they could not send money for his separate maintenance in California. Braden met them at the train and Elizabeth introduced him to Gerald as ''your new grandfather.'' The two adults continued their relationship up to the time that Braden was killed, and during that period Braden supported the three, although for some time Elizabeth was in receipt of a weekly disability indemnity on account of an industrial injury which she had suffered. She testified that Braden had been the sole support of Gerald for the year and a half which ensued between his arrival in California and the death of Braden; that Braden had turned over his weekly paycheck to her and she had paid all the bills, being able to save some money. Gerald was placed in school. His health condition improved, but no determination to return him to New Jersey had been arrived at when Braden died. Braden apparently lived on terms of affection with both Elizabeth and Gerald, spending considerable time with the minor when not working, buying him presents and giving him some spending money. Elizabeth estimated that Braden's support, which

she stated to be the sole support of Gerald, consumed over $100 a month of Braden's money. Braden earned a little over $250 per month as a laborer on the farms. There is no claim that Gerald was in anywise aware of wrongful relations between Elizabeth and Braden and he apparently accepted his position in the new menage and was content with the arrangements. There was no hint in the record that Braden was dissatisfied with the situation or contemplated a change; and while the Pollingers both testified that Gerald's going to California with his grandmother did not constitute an abandonment of him by them and that their New Jersey home was open to receive him back, yet they gave no testimony that they contemplated any change so long as Elizabeth cared for Gerald and his health improved, which it did. They contributed nothing during the period of his absence to Gerald's support, save a dollar at his birthdays, although they corresponded regularly with him. Within a few months after Braden's death Gerald did return to the Pollinger home in New Jersey with his health much improved. It appears that an ultimate return was anticipated by the parents and the grandmother, although nothing definite was arranged about it.

Petitioner contends that the evidence does not support respondent's finding that Gerald was a dependent of Braden. In considering this contention we are governed by sections of the Labor Code. Section 3503 provides that: ''No person is a dependent of any deceased employee unless in good faith a member of the family or household of the employee, or unless the person bears to the employee'' certain specified relationships, none of which apply to Gerald. This section does not require relationship by blood or marriage between the alleged dependent and the employee.

''The two classifications here, one of persons who are in good faith members of the employee's family or household, and the other of persons having specific relations of kinship, are clearly used in the alternative and are to be separately considered.'' (*Moore Shipbuilding Corp.* v. *Industrial Acc. Com.*, 185 Cal. 200, 206 [196 P. 257, 13 A.L.R. 676] ; *Federal Mut. L. Ins. Co.* v. *Industrial Acc. Com.*, 187 Cal. 469, 474 [202 P. 664].)

Whether the claimant is a dependent and the degree of dependency are alike questions of fact for the respondent commission to determine, for section 3502 of the Labor Code provides:

''In all other cases [that is, cases not governed by specified

relationships], questions of entire or partial dependency and questions as to who are dependents and the extent of their dependency shall be determined in accordance with the facts as they exist at the time of the injury of the employee.''

Interpretative of the foregoing, it has been said that the power of the Legislature to determine what classes of dependents shall come within the Workmen's Compensation Act is not measured by common-law rules of kinship, inheritance and liability for maintenance and support. (*Moore Shipbuilding Corp.* v. *Industrial Acc. Com., supra.*) Also it has been said that dependency does not mean absolute dependency for the necessities of life, but that it is sufficient that the contributions of the workman are looked to for support and the maintenance of the dependent's accustomed mode of living. (*Larsen* v. *Industrial Acc. Com.,* 34 Cal.2d 772 [215 P.2d 16].) The statute expressly declares that the death benefit must be computed on the rate of contributions at the time of the injury which causes the death. (*California Cas. Indem. Exch.* v. *Industrial Acc. Com.,* 211 Cal. 218 [295 P. 34].) We think that respondent commission was justified in finding that Braden had, in fact, established and was maintaining a household or family and that Gerald was a member in good faith thereof. In *Moore Shipbuilding Corp.* v. *Industrial Acc. Com., supra,* the employee had been living in meretricious relations with the mother of the minor claimant. On the question of whether or not the minor was a member of the employee's household, the Supreme Court said, at page 207: ''There can be no doubt that Bauer, Mrs. Miller, and the little girl [Ida Miller] constituted a family or household. They were living together in all the interdependency and intimacy of man and wife and their legitimate offspring.'' In *Federal Mut. Life Ins. Co.* v. *Industrial Acc. Com., supra,* at pages 470, 474, while considering a relationship similar to that involved in the instant case, the Supreme Court said: ''From that time Thompson and Mrs. Gnash lived together openly as husband and wife. Mrs. Gnash used the name 'Mrs. Thompson' and Bertha [her minor child] was called 'Bertha Thompson.' Thompson supported them entirely, giving the money to Mrs. Gnash, who bought what she wanted for Bertha. . . . We think the facts of the case at bar, as already brought out, show that the three people were living together as a family and were members of one household.'' The case last cited further held it to be clear from the wording of the act that the benefit of the statute does not depend upon legal liability for sup-

port and that, although the minor in that case, Bertha Gnash, had a father who was legally liable for her support, yet within the meaning of the act she was at the time the employee received the injury from which he died "already dependent upon him." Said the court: "[I]f she were in fact a dependent of Thompson, the effect of Thompson's death upon her is the same whether she has a father who is legally liable for her support or not. If she was in fact a dependent of Thompson, and was in good faith a member of his household, she is entitled to compensation, whether or not her father was alive."

We are expressly required by Labor Code, section 3502, *supra*, to confine our considerations on the question of dependency to the date of the injury to Braden, for to construe the section otherwise "would be to give no effect to the words 'questions as to who are dependents' and 'the facts as they exist at the time of the injury to the employee.'" (*Granell* v. *Industrial Acc. Com.*, 25 Cal.2d 209, 214 [153 P.2d 358].)

Petitioner contends that the stay of Gerald in California was intended to be temporary and that in view of the existence of the family home maintained by his parents in New Jersey he could not, therefore, become a member of Braden's household. We think that, in view of the indefinite arrangements under which Gerald came to California with his grandmother, in view of the fact that he had been living in the home of the grandmother and Braden for a year and a half, in view of the further fact that there was no indication that these arrangements were to be terminated any time within the immediate future, and in view of the fact, that, so far as the arrangements made be concerned, Gerald might have continued to reside in California for years had Braden lived, the commission was justified in holding that, notwithstanding the Pollinger home was in New Jersey, notwithstanding the willingness upon necessity of the Pollingers to have Gerald return there, and notwithstanding they had not in any sense abandoned him or yielded legal parental control over him had they wished to assert it, he was yet a member in good faith of Braden's household and dependent upon him for support at the time of Braden's death.

Petitioner contends further that, even if there was dependency, the record will not support the respondent's finding that Gerald was wholly dependent upon Braden. We cannot sustain the petitioner in this. At the time of Braden's

death, Elizabeth was not working, and for quite some time prior thereto she had not been working, and the indemnity payments she had been receiving had ceased. When Braden was injured, therefore, and that is the pivotal date, he and he alone wholly supported the minor.

The award is affirmed.

Peek, J., and Schottky, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied June 23, 1955.