[Civ. No. 12729. Third Dist. Aug. 6, 1971.]

HERELINDA LOZA MUNOZ et al., Petitioners, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
CONSOLIDATED FOODS CORPORATION et al., Respondents.

**COUNSEL** .

Stromsness & Hultgren and C. A. Stromsness for Petitioners.

Rupert A. Pedrin, R. E. Ryan, Hanna & Brophy and Gerald M. Kennedy for Respondents.

**OPINION**

**PIERCE, P. J.**—The spouse of Jose Munoz petitioned for total dependency death benefits due as a widow with seven surviving minor children. (Lab.

Code, § 4702.) Those benefits were claimed as of August 9, 1968, the date of the husband's admittedly industrially caused injury and death. The referee and board found partial dependency only. Petition for reconsideration was denied. We granted a writ of review.

The sole question is whether petitioners were "totally" dependent as that term has been construed in workmen's compensation cases.

The facts essential to the disposition of this matter are: The widow and most of her minor children reside in Mexico. Her husband at the time of his death in California was employed and during the 20 years theretofore had worked in this state but returned to Mexico and lived with his wife and family several months each year. Brijido and Felipe, minor sons 19 and 17 years of age at the time of the father's death, were living in California most of the year but also returned to Mexico in winter. The referee found that the father sent his spouse $2,400 annually of which the sons contributed $300. The evidence to support the contributions of the sons was scant. We include it in the margin.[1] The referee's finding fixing $300 annually as the sum contributed by Brijido and Felipe to their mother and dependent children at the time of the father's death "when [they] were working" has no exact mathematical basis in the record. Nevertheless, we are not hypercritical of the selection of that amount. It may have been as close an estimate as was possible. (See fn. 1.) The question, however, is whether, under workmen's compensation law, the mother and minor children who received ⅞ of their total income from the deceased employee were totally dependent upon him for support.

---

[1]Brijido Munoz gave a statement to a Mr. Butler, a claims investigator of Hanna and Brophy, attorneys for the compensation carrier of Munoz' employer. In it Brijido stated, after having discussed the money his father had contributed to the support of the family: "Felipe and I also used to send $15-20 home when we were working." The statement was being taken by a professional. There is no mention whether the sums mentioned ($15-20) were sent by each brother (a total of $30-40), or whether $15-$20 was the collective amount. There was nothing in the statement to indicate how much of the time the brothers were, or either of them was, working. (It is known that they were in Mexico at the family home during three to four months of each year. They did not work while at home.)

Felipe apparently did not give a statement and did not testify at the hearing. Brijido testified. He testified that the family received no income from any source other than that received from the father; that he, Brijido, had sent his mother no money. On cross-examination he testified: "Well, we help my father sometimes, but we haven't sent any money to Mexico. . . . Q. You used to give the money to your father to send home? A. Well, I don't know what he do with the money, but we gave him some money. Perhaps he sent several of those—that money to Mexico. Q. Then you sent some money home yourself? A. No. Q. Did your brother, that you know of? A. My brother and I give my father some money. . . . Q. At that time when you talked to Mr. Porter [insurance representative] and he took your statement, did you tell him that Felipe and yourself used to send about fifteen or twenty dollars home a month? A. Yes, we gave my father that money sometimes. And we know that my father was sending money also."

Labor Code section 3501 provides that certain persons, including a wife living with her husband at the time of his injury, and a child under the age of 18, shall be conclusively presumed to be wholly dependent for support upon the deceased employee. Labor Code section 3500 provides that the presumption of total dependency shall not apply in favor of nonresident aliens. There is, therefore, no conclusive presumption in favor of petitioners.

■ "Total," however, does not require 100 percent dependency. It is stated in 2 Hanna, California Law of Employee Injuries and Workmen's Compensation (2d ed.) section 15.02, (3) (b) as follows: "Total dependency exists as a fact when the dependent has subsisted entirely upon the employee's earnings. It is not necessary that the dependent be physically or mentally incapable of self-support. Nor will his total dependency status be affected by his small and inconsequential earnings in irregular employment, or a small income from another source, if such earnings or income did not substantially affect his dependency status toward the employee. However, a dependent having substantial earnings and regular employment, or a substantial portion of his living cost met from a source other than the employee, is not totally dependent, although he may be partially dependent." As applied to this case, the key language in the foregoing quotation seems to be "small income from another source, if such . . . income did not substantially affect his dependency status toward the employee."

*Peterson* v. *Industrial Acc. Com.* (1922) 188 Cal. 15 [204 P. 390], by no means a "spotted calf" case comes the closest in its facts to the case we have before us. There, a sister and a nephew of a deceased employee were held to be totally dependent upon his earnings. There, as here, the employer claimed dependency was partial because the sister from time to time took charge and care of children and when working in that occupation earned between $10 and $15 per month. The nephew had a newspaper route part of the time, earning $5.00 per month. (We remember these were 1919 dollars.) Otherwise, both were entirely dependent upon decedent. Our Supreme Court said (on p. 18): "It is but a truism to say that total dependency exists where the applicants subsist entirely on the earnings of the deceased employee, but in applying this rule courts will not deprive applicants of the rights accorded total dependents, when otherwise entitled thereto, merely because of minor considerations or benefits which do not substantially affect or modify the status of the applicants toward the deceased employee. (*Bloomington-Bedford Stone Co.* v. *Phillips*, 65 Ind. App. 189 [116 N.E. 850].)" The court concluded (on p. 19): "It appearing that at the time of the deceased employee's injury the applicants were dependent upon his earnings and contributions for shelter, food, and clothing, and had no independent means of their own, it must be held that they were total dependents."

In *Pacific etc. Co.* v. *Industrial Acc. Com.* (1928) 204 Cal. 427 [268 P. 633], a mother was wholly dependent upon her deceased son (the employee) except there was (to quote from the decision on p. 429) "certain evidence to the effect that Mrs. Jaynes [the mother] was, at the time her said son was injured, receiving support from another of her sons, who was residing with her at said time, and also upon certain evidence that she was receiving compensation as manager of the apartment house in which she and her two sons were residing as tenants." Both decedent and the other son were adults in their twenties. But at the precise time of the death of the employee-son (who was paying the applicant $25 per week), the younger son had just obtained a job after having been out of work for several months. Because of debts accumulated during his period of unemployment he had not re-commenced contributions to the mother. (Before that—the court commented—the contributions of the younger son actually would no more than compensate for board and room.) Money earned by Mrs. Jaynes as an apartment house manager was temporary and described as being a "little." Our Supreme Court denied the claim of the employer's compensation carrier that the facts just related constituted the mother a partial rather than a total dependent.

*Coborn* v. *Industrial Acc. Com.* (1948) 31 Cal.2d 713 [192 P.2d 959], was unquestionably a partial dependence case and the court so held. Its facts need not be related. It cites with approval and thereby gives a certain currency (up to 1948) to the earlier decisions, both pro and con on the issue of total versus partial dependency.

In *London Guar. etc. Co.* v. *Ind. Acc. Com.* (1943) 57 Cal.App.2d 616 [135 P.2d 7], the court reversed an order that the deceased employee's grandniece [the applicant] was totally dependent upon him. The grandniece was 18 years old and earned approximately $80 a month. She lived with decedent, who paid the rent, utilities, food and medical bills. In reversing the order, the court relied upon the fact that the grandniece was earning substantial sums and was expending all of her earnings on herself and for her support in maintaining her standard of living. She paid for some of her clothes, her meals out, and substantial incidental expenses. The court referred to the case of *Tuttle* v. *Industrial Acc. Com.* (1939) 31 Cal.App.2d 279 [87 P.2d 881]. In *Tuttle,* the deceased employee was the stepfather of children who were determined to be total dependents. The court reversed the finding of total dependency because the children's mother regularly earned between $16 and $18 a week which was contributed to the support of the family. The deceased employee earned approximately $150 the month before he was killed. The deceased employee, therefore, contributed approximately ⅔ the total amount of the family's support, wherein his wife contributed approximately ⅓ the total amount.

Other cases could be referred to. Actually each case must be decided upon its own facts. ▪ Courts must be obedient to the rule that where the board has acted on substantial evidence within the precepts of the workmen's compensation provisions of the Labor Code, it, not the courts, is the final arbiter of facts. On the other hand, both that law and the state Constitution demand that courts have a duty to oversee the board to insure that it shall not deny to workmen the liberal construction of the law's provisions. The command of liberality embraces those code sections which apply to the allowance of death benefits. "Within the mandate of California Constitution, article XX, section 21, expressly declaring that the Legislature is vested with 'plenary power . . . to create, and enforce a complete system of workmen's compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any and all persons to compensate any or all of their workmen for injury or disability . . . sustained by the said workmen in the course of their employment,' and its express declaration that this is 'declared to be the social public policy of this State, *binding upon all departments of the State government,'* the Legislature adopted section 3202 of the Labor Code providing that its workmen's compensation provisions 'shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment.' That command to the court has been heeded many, many times by our Supreme Court and appellate courts. (Italics ours.) (See cases cited in West's Lab. Code Ann., § 3202, pp. 456-459, 1970 Supp., p. 165 et seq.)" (*Michon* v. *Workmen's Comp. App. Bd.* (1971) 15 Cal.App.3d 917, 922-923 [93 Cal.Rptr. 476].)

▪ It is true, as the code section (Lab. Code, § 3501) declares, that dependency is to be determined as of the date of the fatal injury. But the Legislature did not intend, as the cases cited show, that that provision should (or could) be applied rigidly, literally and unrealistically. It must be remembered that the dependents are being allowed a one-time death benefit to compensate them finally and fully for all monetary loss occasioned by the death of decedent.

When Munoz, Senior, died, two sons had already reached adulthood. They had left the family home and did not contribute anything to petitioners. Brijido and Felipe, when employed, had contributed small amounts during their minority. When we consider the overall picture of the family financial position at the time of decedent's death, it is but to state the obvious when we say that both Brijido and Felipe will, no doubt, soon be leaving the family "nest" (if they have not already done so) that they will marry, start their own families and will support them. Perforce, as children have done throughout the ages, each will be helping "mama" and her still young brood financially to the extent of their then ability to do so, but it was

not the purpose of the death benefit provisions of the workmen's compensation law to separate "total" from "partial" dependency on the tenuous, temporary and short-lived pittances Brijido and Felipe were contributing. In brief, decedent was the family breadwinner and there was total dependency.

The order is annulled. The board is directed to make its order and award on the basis of total dependency.

Regan, J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.