[No. S059214. Jan. 25, 1999.]

CHEVRON U.S.A., INC., Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and LUCILLE
STEELE, Respondents.

1184

**COUNSEL**

Harbinson, Carlson & Tune, Joel D. Tondreau and Mark H. Tune for Petitioner.

Bryce C. Anderson; Kazan, McClain, Edises, Simon & Abrams, Victoria Edises, Anne Burr and Dianna Lyons for Respondent Lucille Steele.

## OPINION

**BROWN, J.**—Under the Workers' Compensation Act, an employer must pay a death benefit to the dependents of an employee who dies as a result of a work-related injury. (Lab. Code, § 4701, subd. (b); all further statutory references are to this code unless otherwise indicated.) In cases of partial dependency, the death benefit is "four times the amount annually devoted to the support of the partial dependents" subject to a statutory cap linked to the date of the decedent's fatal injury. (§ 4702, subd. (a)(4) (hereafter § 4702(a)(4)).) This amount, like all questions relating to dependency, is to be determined in accordance with the facts as they exist at the time of the decedent's injury. (§ 3502; *Atlantic Richfield Co.* v. *Workers' Comp. Appeals Bd.* (1982) 31 Cal.3d 715, 722 [182 Cal.Rptr. 778, 644 P.2d 1257] (*ARCO*).)

The income used as the basis on which to calculate the amount annually devoted to the partial dependents' support may be easily ascertained when the time of injury occurs while the decedent was employed and receiving a paycheck, and wages are the sole source of support. Here, we are asked to decide how a surviving spouse's partial dependency death benefit should be computed when the amount of support contributed by the decedent at the time of injury includes income that is not lost as a result of his or her death.

The Court of Appeal concluded the partial dependency death benefit must be based on the amount of support lost or otherwise affected by the decedent's death, and cannot include income and investments which did not terminate or change as a result of death. Because we find the limitation imposed by the Court of Appeal's construction unsupported by the statutory language of section 4702(a)(4), and the entire statutory scheme of which that provision is a part, we conclude the Court of Appeal erred in adopting such a post mortem approach to calculating the death benefit in this case.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The parties in this matter have litigated numerous issues in the 11 years since the death benefit application was first filed, all but one of which are now resolved. The undisputed facts and procedural history relevant to the remaining question presented for this court's review are as follows.

The decedent, Harvey Steele, worked as an insulator for Chevron U.S.A., Inc. (Chevron), and was exposed to asbestos from 1951 through September 15, 1975. On September 28, 1976, he was diagnosed with parenchymal asbestosis due to asbestos inhalation. He filed a claim for workers' compensation benefits and, in November 1981, was assigned a permanent disability rating of 63 percent for the asbestosis injury.

Meanwhile, in 1977, Mr. Steele retired from his employment with Chevron. Ten years later, on August 12, 1987, he was diagnosed with peritoneal mesothelioma, an asbestos-related cancer of the lining of the abdominal cavity. Mr. Steele died as a result of the mesothelioma on November 13, 1987.

Lucille Steele, decedent's wife, applied for a workers' compensation death benefit on December 2, 1987. Chevron paid Mrs. Steele a total of $8,041 in death benefits at the rate of $119 per week through February 1989, but terminated payments while contesting Mrs. Steele's claim that the date of injury for the mesothelioma was August 12, 1987. On June 7, 1989, the workers' compensation judge (WCJ) determined the date of injury for the mesothelioma was August 12, 1987. Adopting the report and recommendation of the WCJ, the Workers' Compensation Appeals Board (Board) denied Chevron's petition for reconsideration of the date of injury finding. Chevron challenged the Board's order in a petition for a writ of review. The Court of Appeal affirmed the order of the Board in a published opinion. (*Chevron U.S.A., Inc.* v. *Workers' Comp. Appeals Bd.* (1990) 219 Cal.App.3d 1265, 1269-1273 [268 Cal.Rptr. 699] (*Chevron I*), review den. July 10, 1990 [single period of exposure to asbestos can result in more than one occupational disease and more than one date of injury].)

On remand from the Court of Appeal, the case went forward on the question of dependency. In a November 1990 decision, the WCJ found in relevant part that Mrs. Steele was partially dependent on decedent at the time of injury, and awarded her a death benefit in the amount of $63,600. Relying on Mrs. Steele's testimony at a June 13, 1989, hearing, and taking into account that both Mr. and Mrs. Steele were retired at the time of injury, the WCJ computed the amount of the death benefit on the basis of income from decedent's Social Security benefits and Army pension, and decedent's one-half community property interest in income from investment accounts, interest from a savings account, and mortgage payments received from a debtor. The WCJ did not include in the calculation the $3,350 received in 1987 from the sale of land and the $30,108.50 withdrawn in 1987 from an executive life annuity funded by decedent's lump-sum retirement benefit. Mrs. Steele and Chevron each sought reconsideration of the WCJ's findings. The Board granted both petitions and, on July 22, 1991, issued an opinion rescinding the WCJ's findings and award. In addition to making other findings not relevant here, the Board awarded to Mrs. Steele the applicable statutory maximum death benefit of $70,000, but failed to state its reasons for doing so.

Chevron again sought judicial review of the Board's decision after reconsideration, this time contesting the computation and amount of the partial

dependency death benefit. In an unpublished opinion issued on April 8, 1992, the Court of Appeal annulled the award on the ground the Board had not only failed to address Chevron's argument with respect to the determination of Mrs. Steele's death benefit but also failed to comply with the mandate of section 5908.5 requiring the Board's decision granting or denying reconsideration to be in writing, stating the evidence relied on and specifying the reasons for the decision in detail. (*Chevron U.S.A., Inc.* v. *Workers' Comp. Appeals Bd.* (1992) 57 Cal.Comp. Cases 421, 424.)

In a March 6, 1995, opinion following remand by the Court of Appeal, the Board determined Mrs. Steele was partially dependent on decedent at the time of injury and entitled to a death benefit of $64,657.92. Relying on the testimony of Mrs. Steele given at the June 13, 1989, hearing before the WCJ, the Board found all of decedent's income at the time of injury was used for the couple's mutual support and concluded that, at the time of injury, decedent was contributing the following annual amounts to Mrs. Steele's support: $8,646 in Social Security benefits, $756 in Army pension benefits, $418.26 in interest received in 1987 from a savings account funded by decedent's Social Security benefits, $2,159.47 and $2,209.70 representing decedent's one-half community property share of investment income from the Franklin Fund and Dean Witter, respectively, and $1,975.05 representing decedent's one-half community property share of mortgage payments received from a debtor. In its brief on remand, Chevron argued that the determination of the extent of Mrs. Steele's partial dependency should be based on the amount of support she *lost* as a result of decedent's death, pointing out that some of the support contributed by decedent to Mrs. Steele at the time of injury continued after decedent's death. The Board rejected Chevron's argument, finding no support for such an approach in the Labor Code or in the relevant decisional law.

Chevron petitioned the Board for reconsideration, asserting the Board erred in basing Mrs. Steele's death benefit on investment income which was not lost after decedent's death. On May 18, 1995, the Board issued an opinion and order denying reconsideration, and Chevron sought review in the Court of Appeal. Granting Chevron's petition for a writ of review, the Court of Appeal once again annulled the Board's order, concluding the Board erred in its partial dependency determination by including in the calculation community income Mrs. Steele continued to receive after decedent's death. The Court of Appeal remanded the matter to the Board with directions to redetermine Mrs. Steele's death benefit by verifying the amount of support lost or otherwise affected by decedent's death. The court opined that, subject to verification on remand, the death benefit calculation should

be based solely on decedent's annual Social Security benefits of $8,646 and Army pension of $756 because these amounts represent the support that terminated with decedent's death.[1]

Mrs. Steele sought review of the Court of Appeal's determination that the partial dependency death benefit must be based on income lost as result of the decedent's death, and we granted her petition for review.

## II. Discussion

### A. *Overview of the Statutory Scheme*

Article XIV, section 4 of the California Constitution vests authority in the Legislature to create and enforce a system for workers' compensation making "adequate provisions for the comfort, health and safety and general welfare of any and all workers and those dependent upon them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workers in the course of their employment, irrespective of the fault of any party . . . ." Under the Workers' Compensation Act, an employer is liable for a death benefit to the dependents of an employee who dies as a result of a work-related injury. (§§ 3600, 4701, subd. (b).) Except in certain situations not applicable here, the death benefit is a dependent's exclusive remedy against the employer for the employee's work-related death. (§ 3602.)

The death benefit is based on the number and type of dependents. (§ 4702.) A dependent must be either a good faith member of the employee's household or family, or related to the employee in one of the ways listed by statute, for example, a spouse, child, parent, or grandchild. (§ 3503.) Dependency can be total or partial. (§ 4702.) ■ Under the statutory scheme, certain dependents are conclusively presumed to be totally dependent. (See, e.g., § 3501, subd. (a) [employee's minor child or mentally or physically incapacitated child].) If a conclusive presumption of total dependency does not apply, the individual claiming entitlement to a death benefit must establish either total or partial dependency in fact. (*ARCO, supra*, 31 Cal.3d at p. 720; *Arp v. Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 395, 410 [138 Cal.Rptr. 293, 563 P.2d 849].) A total dependent relies on the now-deceased employee for substantially all of his or her support. (*Munoz v. Workmen's Comp. Appeals Bd.* (1971) 19 Cal.App.3d 144, 146-147 [96 Cal.Rptr. 394].) Partial dependents have means of support other than contributions by the decedent. (*Mendoza v. Workers' Comp. Appeals Bd.* (1976) 54

---

[1]The Court of Appeal also reversed a statutory penalty the Board had imposed on Chevron. (See § 5814.) Mrs. Steele did not seek review of this aspect of the Court of Appeal's decision, and, accordingly, we have no occasion to address it here.

Cal.App.3d 820, 823-824 [127 Cal.Rptr. 173].) The question of dependency does not turn on whether the dependent relied on the decedent for life's necessities, but rather whether the dependent looked to the contributions of the decedent "for support according to his or her accustomed mode of living. [Citations.]" (*Wings West Airlines* v. *Workers' Comp. Appeals Bd.* (1986) 187 Cal.App.3d 1047, 1051-1052 [232 Cal.Rptr. 343].) If the deceased employee leaves no surviving total or partial dependents, the employer must pay to the Department of Industrial Relations the amount of the death benefit that would have been payable had the decedent been survived by a totally dependent spouse with no dependent minor children. (§ 4706.5, subds. (a), (c); *ARCO, supra,* 31 Cal.3d at pp. 726-727.)

The identity of dependents, whether their dependency is total or partial, and the extent of partial dependency are "determined in accordance with the facts as they exist at the time of the injury of the employee." (§ 3502; *Massey* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 674, 677 [20 Cal.Rptr.2d 825, 854 P.2d 117]; *ARCO, supra,* 31 Cal.3d at p. 720.) The time of injury also controls the applicable statutory rate of the death benefit. (See § 4702.) In cases of occupational disease such as decedent's here, the time of injury is the date when the employee first suffered disability from the disease and either knew or reasonably should have known the disability was caused by present or prior employment. (§ 5412.) Where a latent occupational disease is involved, the time of injury may be years after the employee's exposure to an injurious substance (see *Chevron I, supra,* 219 Cal.App.3d at p. 1271), even after the decedent's retirement from active employment. (*Department of Highway Patrol* v. *Workers' Comp. Appeals Bd.* (1995) 33 Cal.App.4th 1828, 1834-1836 [40 Cal.Rptr.2d 188] [annulling award of partial dependency death benefits to decedent's adult children where WCJ set time of injury as last day of decedent's employment rather than several years after decedent's retirement as mandated by section 5412].)

In order to substantiate partial dependency, the death benefit claimant must prove the actual dollar amount annually devoted by the decedent to his or her support. (*ARCO, supra,* 31 Cal.3d at p. 723.) Once the claimant has established partial dependency by proving the extent of the support actually contributed by the decedent, he or she has effectively proved "the amount annually devoted to the support of the partial dependent[]" within the meaning of section 4702(a)(4), which governs the calculation of the death benefit. (See 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 1998) § 9.05[4][d], p. 9-25, fn. 51.) Computing the amount of the annual contribution by the decedent to the support of the partial dependents is the statutory mechanism by which the death benefit is

made proportional to the extent of the dependency. (*Spreckels S. Co.* v. *Industrial Acc. Com.* (1921) 186 Cal. 256, 259 [199 P. 8] [addressing a predecessor statute to section 4702(a)(4)] (*Spreckels*).)

In the case of a partially dependent surviving spouse, the death benefit calculation involves "the actual amount which the deceased spouse devoted to the community and to the surviving spouse." (*ARCO, supra,* 31 Cal.3d at p. 722.) The court in *ARCO* set forth the following approach for making the partial dependency determination in this context: "Commencing with the entire earnings of the decedent, the computation of allowances for actual support should include those fixed expenses which are an integral and reasonable part of the standard of living enjoyed by the community." (*Ibid.*) As the court explained, "[e]xpenses related to the standard of living of the community are relevant. Expenses which are personal to the decedent are not." (*Id.* at p. 723; see also *Lynch* v. *Workers' Comp. Appeals Bd.* (1985) 164 Cal.App.3d 594, 598-599 [210 Cal.Rptr. 589] [applying approach prescribed in *ARCO* and observing that most married couples' expenditures will be primarily related to benefit of community].)

B. *Determination of the Amount Annually Devoted to the Partial Dependents' Support*

In the decision below, the Court of Appeal directed the Board to recalculate Mrs. Steele's death benefit based on the actual loss of annual support from decedent at the time of injury, excluding from the computation any income that did not terminate or change as a result of decedent's death. In the Court of Appeal's view, it is the loss of annual monetary support to the dependent and the marital community that controls the calculation of death benefits under the statutory scheme. The court reasoned that because the death benefit depends on the extent of actual dependency, the only way the amount annually devoted to the support of the dependent can be reasonably and consistently determined is to identify support at the date of injury that terminated with the death of the decedent. The court found further support for its construction of section 4702(a)(4) in this court's observation in *Spreckels, supra,* 186 Cal. 256, that the purpose of the death benefit is to compensate dependents of an employee killed in the course and scope of employment "for the loss of the support they were receiving from [the deceased employee] at the time of his injury." (*Id.* at p. 258.)

In reaching its conclusion in this case, the Court of Appeal read into the statutory provision governing the calculation of Mrs. Steele's death benefit a limitation as to the type of income on which the amount devoted to the

support of the partial dependent could be based. There is no such limitation in the statutory language of section 4702(a)(4). The statute provides as the death benefit, "[i]n the case of no total dependents and one or more partial dependents, four times the amount annually devoted to the support of the partial dependents, but not more than seventy thousand dollars ($70,000), for injuries occurring on and after January 1, 1991, a total of ninety-five thousand dollars ($95,000), for injuries occurring on or after July 1, 1994, one hundred fifteen thousand dollars ($115,000), and for injuries occurring on or after July 1, 1996, one hundred twenty-five thousand dollars ($125,000)."

On its face, section 4702(a)(4) speaks of an "amount annually devoted to the support of the partial dependents," and by its terms places no further qualifications on the type of income on which the death benefit calculation may be based. Although a court is not required to apply the literal meaning of a provision if it is contrary to the legislative intent apparent in the statute (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]), we conclude that the plain meaning of section 4702(a)(4) does not frustrate the probable intention of the Legislature in establishing a statutory death benefit under the Workers' Compensation Act. To the contrary. By providing that the death benefit shall be "not more than" a specified amount linked to the decedent's time of injury, section 4702(a)(4) already limits the extent of the employer's liability to the partial dependents of an employee who dies as the result of a work-related injury. In light of the statute's carefully crafted schedule of maximum benefits, it seems unlikely the Legislature meant to place further limits on a partial dependent's entitlement to such benefits by permitting only certain income, i.e., that which terminates at the decedent's death, to be used as the basis for computing the amount devoted to his or her support. If the Legislature had wanted to limit the death benefit in this fashion, it could easily have done so. But the statute contains no such limitation.

Nor is the Court of Appeal's limiting construction of section 4702(a)(4) consistent with the principle that when provisions of the workers' compensation laws relating to death benefits are susceptible of an interpretation either beneficial or detrimental to the dependent, or an ambiguity appears, they must be construed favorably to the dependent. (*Department of Corrections* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 197, 203-204 [152 Cal.Rptr. 345, 589 P.2d 853].) This principle derives from the Legislature's directive in section 3202 that the provisions of the workers' compensation law "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their

employment." The policy expressed in section 3202, in turn, complements the constitutional command of article XIV, section 4 of the California Constitution that a system of workers' compensation "accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character." (See *Public Employees' Retirement System* v. *Workers' Comp. Appeals Bd.* (1978) 87 Cal.App.3d 215, 220-221 [151 Cal.Rptr. 35].) Although section 4702(a)(4) is arguably susceptible of the Court of Appeal's limiting construction, the statutory language does not compel such an interpretation. Because the plain language of the statute amply supports a construction placing no qualification on the type of income that may be used to calculate the death benefit, we are required by section 3202 to construe the provision in this manner.

Finally, the Court of Appeal's construction of section 4702(a)(4), which requires a postdeath inquiry into whether or not income terminated with the death of the decedent, is contrary to the specific and unambiguous command of section 3502 that questions of dependency "shall be determined in accordance with the facts as they exist at the time of the injury of the employee." As the decisions of this court and other Courts of Appeal have recognized, the clear statutory directive of section 3502 is that the time of injury, rather than the date of death, governs the dependency determination. In *Granell* v. *Industrial Acc. Com.* (1944) 25 Cal.2d 209 [153 P.2d 358], for example, death benefits were denied to the widow of a deceased employee who was neither married to nor dependent upon the decedent at the time of injury. (*Id.* at pp. 212-213; see also *Industrial Indem. Co.* v. *Industrial Acc. Com.* (1966) 243 Cal.App.2d 700, 703-705 [52 Cal.Rptr. 647].) In *Hartford A. & I. Co.* v. *Indus. Acc. Com.* (1925) 197 Cal. 17 [239 P. 330], by contrast, a death benefit award to the sister of a deceased employee who was dependent on the deceased at the time of injury was affirmed, notwithstanding the fact she had become self-supporting following the decedent's death. (*Id.* at pp. 18-20; see also *Peterson* v. *Industrial Acc. Com.* (1922) 188 Cal. 15, 18-19 [204 P. 390]; *Roblyer* v. *Workers' Comp. Appeals Bd.* (1976) 62 Cal.App.3d 574, 581 [133 Cal.Rptr. 246], disapproved on another point in *Massey* v. *Workers' Comp. Appeals Bd.*, *supra*, 5 Cal.4th at pp. 683-685.)

The statutory command that the time of injury, rather than the date of death, controls the dependency determination also underlies the decision in *Pacific Employers Ins. Co.* v. *Chavez* (1936) 5 Cal.2d 247 [54 P.2d 701], in which this court concluded the calculation of a death benefit to the deceased employee's wholly dependent mother was unaffected by the mother's receipt of the proceeds of a life insurance policy made payable on the death of her son. (*Id.* at pp. 252-253.)

The Court of Appeal's limiting construction of section 4702(a)(4) cannot be harmonized with the directive of section 3502 that dependency determinations be made in light of the facts as they exist at the time of injury. ■ " 'The words of the statute must be construed in context . . . and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.' " (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268 [284 Cal.Rptr. 718, 814 P.2d 704].)

■ Chevron argues decisions of this court support a construction of section 4702(a)(4) requiring the partial dependent to establish a loss of support resulting from the decedent's death. More specifically, Chevron points to language in several cases expressing the view that the Legislature's purpose in providing for a workers' compensation death benefit was to compensate for the loss of support resulting from the employee's death. In *Spreckels*, *supra*, 186 Cal. 256, for example, the court observed that "[t]he whole theory of the compensation act as to death cases is that the dependents of the employee killed through some hazard of his employment shall be compensated for the loss of the support they were receiving from him at the time of his injury." (*Id.* at p. 258.) And in *ARCO*, *supra*, 31 Cal.3d 715, the court noted with approval the view of one commentator that " 'In order to establish partial dependency it need not be shown that the dependent could not live without the employee's contributions. It is sufficient that such contributions were looked to in the maintenance of the dependent's accustomed mode of living and that after the employee's death the dependent could no longer maintain the same living standard.' " (*Id.* at p. 721, quoting 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (rev. 2d ed. 1981) § 1502[3](c), p. 15-8; see also *Insurance Co.* v. *Industrial Acc. Com.* (1921) 186 Cal. 517, 519 [199 P. 796] [purpose of death benefit provision is to provide compensation to dependent for loss such person will sustain because of decedent's death].)

Although the cases Chevron relies on as support for the Court of Appeal's construction of section 4702(a)(4) speak of a "loss of support" as the purpose underlying the workers' compensation death benefit generally, a close review of these decisions discloses neither was concerned with the question of statutory construction presented here.

In *Spreckels*, *supra*, 186 Cal. 256, the deceased employee had been supporting his brother and brother's family for several years with a monthly contribution of $145. Three months prior to the employee's fatal injury, the contributions dropped to $45 per month. (*Id.* at p. 257.) Finding the brother

and his family dependent on the deceased employee, the Industrial Accident Commission, the predecessor to the Board, calculated the death benefit by using the amount actually contributed during the entire year prior to the time of the fatal injury. The court in *Spreckels* found this calculation erroneous (*id.* at p. 258), reasoning that former section 9, subdivision (c)(2), a predecessor statute not materially different from section 4702(a)(4), contemplates the calculation of a rate at which the decedent was contributing at the time of injury, not the amount actually contributed in the year preceding the decedent's fatal injury.[2] (*Spreckels, supra,* 186 Cal. at p. 258.) As the court explained, "The whole theory of the compensation act as to death cases is that the dependents of the employee killed through some hazard of his employment shall be compensated for the loss of the support they were receiving from him at the time of his injury. This necessarily means that the death benefit must be computed on the rate of contribution at that time. It is the rate which is the measure of the loss, not the gross amount which the decedent has happened to pay through any past year, or through any other period of time." (*Ibid.*)

In another case cited by Chevron, *ARCO, supra,* 31 Cal.3d 715, this court addressed the specific question of how to determine partial dependency in cases where the surviving spouse is employed at the time of injury. (*Id.* at pp. 719-723.) In resolving this question, the court considered whether to adopt one approach to determining the appropriate death benefit under former section 4702, subdivision (d), which called for simply dividing the earnings of the decedent in half and multiplying this amount by four. The court observed that the suggested method failed to consider the standard of living of the surviving spouse and the amount actually contributed to his or her support. In rejecting the proposed approach, the court relied in part on the passage cited by Chevron above. (*ARCO, supra,* 31 Cal.3d at pp. 720-721.)

Contrary to Chevron's argument, nothing in these cases can be taken as an endorsement by this court of the Court of Appeal's loss of support construction of section 4702(a)(4). ▮ It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered. (*People* v. *Banks* (1993) 6 Cal.4th 926, 945 [25 Cal.Rptr.2d 524, 863 P.2d 769]; *Ferguson* v. *Workers' Comp. Appeals Bd.* (1995) 33 Cal.App.4th 1613,

---

[2]Former section 9, subdivision (c)(2) read in relevant part: " 'In case the deceased employee leaves no person wholly dependent upon him for support, but one or more persons partially dependent therefor, the said dependents shall be allowed . . . a death benefit which shall amount to three times the annual amount devoted by the deceased to the support of the person or persons so partially dependent.' " (*Spreckels, supra,* 186 Cal. at p. 257.)

1624 [39 Cal.Rptr.2d 806].) ▮▮▮ Furthermore, the underlying purpose of the workers' compensation death benefit has been expressed in terms other than "loss of support." As articulated by the court in *Public Employees' Retirement System* v. *Workers' Comp. Appeals Bd., supra,* 87 Cal.App.3d 215, the death benefit is "designed to mitigate hardship for dependents of . . . employees whose deaths arise out of the course of employment." (*Id.* at p. 220.)

▮▮▮ Chevron argues finally that the term "support" in section 4702(a)(4) relates only to an employee's earnings from employment and does not include income from investments or savings.[3] For this proposition, Chevron first relies on *Power Co.* v. *Industrial Acc. Com.* (1923) 191 Cal. 724 [218 P. 1009] (*Great Western Power*).

In *Great Western Power*, the decedent had been working for the employer for only a few months at the time the fatal injury occurred. Prior to his employment there, the decedent engaged in contracting work and earned wages hiring out himself and his team of horses. (191 Cal. at pp. 732, 736.) During the four-and-a-half-month period preceding his fatal injury, the decedent also had income from sales of furs, livestock, and milk. (*Id.* at p. 734.)

The court annulled an award of death benefits to the decedent's dependent family members, finding the Industrial Accident Commission erred in determining the amount devoted by the decedent to their support. (*Great Western Power, supra,* 191 Cal. at pp. 733-738.) Relying on the reasoning of *Spreckels, supra,* 186 Cal. 256, the court faulted the commission for including income other than the wages paid by the employer in its calculation of the amount devoted to the dependents' support. The court concluded such income bore no relation to the rate of contribution at the time of the decedent's death.[4] (*Great Western Power, supra,* 191 Cal. at p. 736.) More specifically, the court found the amounts paid to the decedent for the hire of his team of horses should not have been included in the calculation because they were "disconnected from and far disassociated from his employment

---

[3]Chevron did not raise this argument prior to its briefing in this court and promptly abandoned it at oral argument. Nonetheless, since our dissenting colleague advances a similar argument, we proceed to address it here.

[4]In *Great Western Power*, the decedent's industrial injury and death occurred on the same day, September 17, 1920. (*Great Western Power, supra,* 191 Cal. at pp. 733-734.) Although the court was imprecise in using the terms "time of injury" and "time of death" interchangeably, it is clear from its reliance on *Spreckels* that the court understood the time of injury, rather than the time of death, to be the focal point of the partial dependency determination. (*Id.* at p. 736.)

and earnings at the time of his death." (*Ibid.*) Similarly, income from the decedent's earlier sales of furs, milk, and livestock should not have been included because they bore no "relation to the rate of contribution at the time of the employee's death." (*Id.* at p. 737.) (See, *ante*, fn. 4.)

*Great Western Power* affirms that, under the applicable statutory framework, the partial dependency death benefit is based on the amount decedent was devoting to the dependents at the time of injury. The measure of support is an amount ascertainable at a single point in time, the time of injury, and multiplied accordingly to reach the annual rate of contribution. Although the decedent's earnings from employment undoubtedly provide a meaningful and ascertainable measure of his contribution to the dependents' support, nothing in the reasoning of *Great Western Power* suggests the death benefit calculation is limited to income that is employment-derived. Like the *Spreckels* decision on which it relied, *Great Western Power* focused on the requisite temporal connection between the support devoted by the decedent and the time of injury, not on the character of the income itself. Notwithstanding Chevron's contrary contention, so long as the decedent's income is capable of measurement as a rate of contribution at the time of injury, it may properly be included as part of "the amount annually devoted to the support of the partial dependents" within the meaning of section 4702(a)(4), regardless of whether or not it derives from the employment relationship.

Chevron also finds support for its argument that only earnings from decedent's employment constitute support within the meaning of section 4702(a)(4) in certain language in *ARCO, supra*, 31 Cal.3d 715, in which the court stated that "the appropriate method for determining partial dependency when both surviving and deceased spouses were employed is to require that the survivor establish the actual 'amount annually devoted to' his or her support from the *earnings* of the decedent." (*Id.* at p. 723, italics added.) Chevron is correct that the court in *ARCO* focused on the "earnings" of the decedent in that case. Indeed, the court directed that the death benefit calculation commence "with the entire earnings of the decedent." (*Id.* at p. 722.) However, the decedent in *ARCO* was employed at the time of injury, and the court had no occasion to consider whether income other than the decedent's annual wages of $16,800 could constitute support of the surviving spouse. (*Id.* at p. 718.) *ARCO* therefore does not inform our inquiry here.

Nor are we persuaded that because the partial dependency death benefit statute previously referenced "average annual earnings," it should be interpreted as if it still did. As originally enacted in 1937, section 4702 provided that the death benefit in a case of total dependency was "three times the

*average annual earnings* of the deceased employee," whereas in a case of partial dependency, the benefit was "three times the amount annually devoted to support of the dependents by the employee." (Stats. 1937, ch. 90, § 4702, p. 284, italics added.) Thus, in context, "the amount annually devoted to support of the dependents" meant "the amount *of earnings* annually devoted to support of the dependents." Significantly, however, the Legislature subsequently amended the statute in 1955 to provide a fixed benefit to total dependents, rather than one based on annual earnings. (Stats. 1955, ch. 956, § 6, pp. 1852-1853.) In light of this amendment, any inference that the partial dependency formula remains tied to an "earnings" concept is tenuous. Indeed, the system appears to work as intended when total dependents receive a *set amount*, regardless of the source from which the decedent was previously supporting them, while partial dependents receive a multiplier of the "amount annually devoted" by the decedent to their support, also regardless of the source thereof, *up to a maximum amount.*[5]

At a minimum, the elimination of the phrase "average annual earnings" from the total dependency formula renders the partial dependency formula ambiguous. As discussed above, when provisions of the workers' compensation laws relating to death benefits are ambiguous, they must be construed favorably to the dependent. (See *ante*, at pp. 1192-1193.) Although section 4702(a)(4) can arguably be read to impose an "earnings" limitation, the statutory language does not compel such an interpretation. Moreover, such an interpretation is extremely harsh, especially in cases of death from employment-related injuries, like mesothelioma, that occur after retirement, when the employee is no longer receiving any earnings from employment.

[5]The Workers' Compensation Act is designed to "accomplish substantial justice . . . expeditiously, inexpensively, and without incumbrance of any character." (Cal. Const., art. XIV, § 4.) "Enactment of the workers' compensation statutes represented a trade-off between the interests of employers and employees: 'The employer accepted no-fault liability in exchange for a *fixed and ascertainable liability*. The worker gave up the possibility of tort damages for limited benefits payable *without the need for litigation*.' [Citation.]" (*Riley* v. *Southwest Marine, Inc.* (1988) 203 Cal.App.3d 1242, 1258 [250 Cal.Rptr. 718], italics added.) As Mrs. Steele explains in her briefing to this court, construing section 4702(a)(4) to contain an "earnings" limitation would seriously undermine these goals. In particular, it "would require a tracing of funds as complex as that done in domestic relations litigation." "For example, if a decedent had both wages and investment income before death, and used the totality to support dependents, would one prorate the wage expenditures between dependents or attempt to determine which funds went to which dependents? If a decedent had used part of his total income for his own personal expenditures, is it presumed that these expenditures came from investment income, or must one determine the source?" "If income from wages is used to purchase an investment, does the return from the investment lose its character as earnings for purposes of the dependency benefit merely because the payment is deferred? If so, then what is the nature of a pension or a social security benefit, which represents deferred income?"

That is, while a total dependent would presumably be entitled to the statutory fixed amount, a partial dependent would presumably be entitled to no benefit at all. To the extent the Legislature considered the issue at all, it is unlikely that it intended to create a gap in coverage for partial dependents in cases of latent illness. Under these circumstances, and because the plain language of section 4702(a)(4) amply supports a construction placing no qualification on the type of income that may be used to calculate the death benefit, we decline to read an "earnings" limitation into the statute. Of course, if the Legislature disagrees with our construction of the statute, it remains free to amend the statute to better reflect its intent.

### III. CONCLUSION AND DISPOSITION

For the foregoing reasons, the judgment of the Court of Appeal, annulling the order of the Board, is reversed, except to the extent the Court of Appeal reversed the statutory penalty the Board had imposed on Chevron. (See *ante*, p. 1189, fn. 1.) The matter is remanded to the Court of Appeal with instructions to reinstate the Board's order and award with the exception of the statutory penalty.

George, C. J., Kennard, J., Baxter, J., and Werdegar, J., concurred.

**MOSK, J.**—I dissent.

In what the majority explain as an attempt to avoid a harsh result for the applicant in this matter, they construe Labor Code section 4702, subdivision (a)(4), to provide for a partial dependency death benefit that was not contemplated by the Legislature. Their construction of the provision not only overlooks important historical and contextual evidence of what the statutory text was intended to mean, but results in an anomaly that is inconsistent with the policies underlying our workers' compensation scheme.

For the reasons discussed below, I conclude that in a case of partial dependency, the Labor Code provides for a death benefit of four times *the amount of earnings from employment* annually devoted to the support of the partial dependent at the time of the decedent's injury. (Lab. Code, § 4702, subd. (a)(4).)

I

A brief summary of the relevant background is as follows.

Decedent Harvey Steele, an employee of defendant Chevron, U.S.A., Inc., (hereafter Chevron), filed a claim for workers' compensation benefits after

he was diagnosed with work-related asbestosis. He retired in 1977. On August 12, 1987, he was diagnosed with peritoneal mesothelioma; he died as a result of that illness in November 1987. At the time of the injury resulting in his death, he did not have any earnings from employment, but was receiving pension and Social Security benefits and income from investments and other sources.

In December 1987, decedent's wife, Lucille, applied for a workers' compensation death benefit. In June 1989, the Workers' Compensation Appeals Board (hereafter the board) ordered that the date of injury for the purposes of the death benefits was August 12, 1987. The Court of Appeal affirmed the order. (*Chevron U.S.A., Inc.* v. *Workers' Comp. Appeals Bd.* (1990) 219 Cal.App.3d 1265, 1269-1273 [268 Cal.Rptr. 699].)

In March 1995, the board determined that Lucille, also retired, was only a partial dependent at the time of her husband's diagnosis with mesothelioma; it was undisputed that she was receiving both Social Security and pension benefits. The board awarded her a death benefit of $64,657.92. It computed the amount based on decedent's Army pension, Social Security benefits, interest from a savings account, and his community property interest in investment income and in mortgage payments from a debtor.

The Court of Appeal annulled the board's order, concluding that the amount of death benefit should be based only on the amount of support Lucille lost as a result of decedent's death. Thus, it concluded, the death benefit should be based only on decedent's Social Security benefits and Army pension, which terminated at the time of decedent's death.[1]

We granted review; I would now reverse.

## II

It is undisputed that decedent's wife was a partial dependent at the time of the injury, i.e., the date when decedent was diagnosed with mesothelioma. Accordingly, the extent of her dependency must be determined by the facts as they existed at that time. (Lab. Code, § 3502.)[2]

Labor Code section 4702, subdivision (a)(4), in relevant part provides: "[T]he death benefit . . . [¶] . . . [¶] [i]n the case of no total dependents and

---

[1]The Court of Appeal, in addition, reversed a penalty for alleged unreasonable termination of death benefits by Chevron. Review was not sought on that issue.

[2]Any death benefit in this matter must be based on "the actual amount which the deceased spouse devoted to the community and to the surviving spouse" at the time of the injury leading to death. (*Atlantic Richfield Co.* v. *Workers' Comp. Appeals Bd.* (1982) 31 Cal.3d 715, 722 [182 Cal.Rptr. 778, 644 P.2d 1257].) The Labor Code was amended in 1989, with regard

one or more partial dependents [shall be] four times the amount annually devoted to the support of the partial dependents, but not more than seventy thousand dollars ($70,000), for injuries occurring on and after January 1, 1991 . . . ."

The provision refers to a benefit for partial dependents of "four times *the amount annually devoted to* the support of the partial dependents." (Italics added.) The critical question, then, is "amount" of what? The Court of Appeal concluded that the "amount" consisted of income from any source whatsoever that was "lost" as a result of the employee's death. Thus, it could be based on decedent's Army pension and possibly his Social Security benefits—because those benefits would terminate with his death—but could not include any income that would continue to be received by the partial dependent. The majority reject that view, concluding that the "plain meaning" of the phrase "amount annually devoted to the support" necessarily includes *all* income from any source whatsoever, including investment income and interest from savings, regardless of whether the partial dependent will continue to receive that income after the employee's death.

I disagree. The phrase "amount annually devoted" is not susceptible of either the Court of Appeal's or the majority's broad reading.

The statutory phrase, "amount annually devoted to the support of the partial dependents," has not changed since 1937, when the statute was first enacted. The original form of the statute was: "The death benefit shall be a sum sufficient to equal: [¶] (a) In a case of total dependency, three times the average annual earnings of the deceased employee. [¶] (b) In a case of partial dependency only, three times the amount annually devoted to support of the dependents by the employee." (Stats. 1937, ch. 90, § 4702, p. 284.) In context, the term "amount" clearly, though implicitly, meant the "amount of earnings" annually devoted to support of the dependents"—not the amount of all income from any source whatsoever, or even the amount of income from any source whatsoever that was "lost" as a result of the employee's death.

We so interpreted the statute in *Atlantic Richfield Co.* v. *Workers' Comp. Appeals Bd.*, *supra*, 31 Cal.3d at page 722. There, the death benefit for

to injuries occurring after January 1, 1990, to provide for a conclusive presumption that a spouse to whom a deceased employee was married at the time of death is wholly dependent for support if the surviving spouse earned $30,000 or less in the 12 months preceding the death. (Lab. Code, § 3501, subd. (b).) The statute thus provides an exception to the rule that all questions regarding the identity of dependents and extent of their dependency are determined as of the date of the employee's injury.

partial dependents of an employee who died on the job was based on *earnings* only, not income from any source whatsoever. In construing the statute relating to payment of benefits to partial dependents, we stated: "Commencing with the entire *earnings* of the decedent, the computation of allowances for actual support should include those fixed expenses which are an integral and reasonable part of the standard of living enjoyed by the community." (*Ibid.*, italics added.) The "earnings" at issue consisted solely of the decedent's "salary." (*Id.* at p. 719.)

In *Power Co.* v. *Industrial Acc. Com.* (1923) 191 Cal. 724 [218 P. 1009], we focused on the *character* of the income to be considered in determining the extent of partial dependency. We found certain of the decedent's income to be "disconnected from and far disassociated from his *employment and earnings*." (*Power Co., supra*, 191 Cal. at p. 736, italics added; see also *id.* at p. 730 ["The fact of [the family members'] dependency on the *earnings* of the employee, and the degree thereof, must therefore, be determined in accordance with the existing fact at the time of the injury." (Italics added.)].) We concluded therein that the award of death benefits to the decedent's partial dependents should be based solely on his earnings from employment, i.e., wages, and could not include his income from other sources or the value of services he rendered to the household.

*Spreckels S. Co.* v. *Industrial Acc. Com.* (1921) 186 Cal. 256, 257 [199 P. 8], similarly, describes the purpose of the death benefit as compensating dependents for loss of support, in that case the loss of the decedent's monthly contribution to his brother's family to supplement their earnings. "The whole theory of the compensation act as to death cases is that the dependents of the employee killed through some hazard of his employment shall be compensated for the loss of support they were receiving . . . at the time of his injury." (*Id.* at p. 258; see also *Insurance Co.* v. *Industrial Acc. Com.* (1921) 186 Cal. 517, 519 [199 P. 796] ["The purpose of the [workers' compensation] act is to provide a compensation to the dependent person for the loss such person will sustain because of the death of the decedent . . . . [T]he loss to be compensated for . . . is to be confined to the loss of support from the decedent."]; *Moore S. Corp.* v. *Industrial Acc. Com.* (1921) 185 Cal. 200, 205 [196 P. 257, 13 A.L.R. 676] ["[T]he benefits of this law are not provided as an indemnity for negligent acts committed or as compensation for legal damages sustained, but [as] an economic insurance measure to prevent a sudden break in the contribution of the worker to [dependent

members of] society, by his accidental death in the course of his employment."].)[3]

To be sure, Labor Code section 4702, subdivision (a), was subsequently amended to provide, in the case of total dependents, for a fixed amount—i.e., one set by statute and not based on annual earnings. (See Stats. 1955, ch. 956, § 6, pp. 1852-1853.) That does not, however, change the meaning of the provision relating to partial dependents which continues to refer to "the amount annually devoted to the support of the dependents."

The majority acknowledge the fact that " 'the amount annually devoted to support of the dependents' " meant, as originally enacted, " 'the amount *of earnings* annually devoted to support of the dependents' " (maj. opn., *ante*, at p. 1198). They conclude, however, that subsequent amendments to the statute with regard to benefits for total dependents have "[a]t a minimum" resulted in an ambiguity that must be resolved favorably to decedent's wife here. This is unpersuasive. There is no ambiguity when the provision for partial dependents is, as it must be, read in the context of its legislative history. As we stated in *Nickelsberg* v. *Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 298 [285 Cal.Rptr. 86, 814 P.2d 1328], "the rule of liberal construction stated in section 3202 should not be used to defeat the overall statutory framework and fundamental rules of statutory construction."

The majority also assert that their construction of the term "amount" to mean amount of income from any source whatsoever is supported by the general principle, derived from Labor Code section 3202, that the workers' compensation law must be liberally construed in favor of extending benefits. (Maj. opn., *ante*, at p. 1192.) But, like the "plain meaning" rule, that principle does not permit us to ignore the historical and contextual evidence of the statutory language whenever there is any dispute concerning the meaning of a provision. " '[A] rule of construction . . . is not a straitjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent.' " (*People* v. *Jones* (1988) 46 Cal.3d 585, 599 [250 Cal.Rptr. 635, 758 P.2d 1165].)

---

[3]The Court of Appeal correctly relied on our explanation in *Spreckels*, *supra*, 186 Cal. 256, that the purpose of the death benefit is to compensate partial dependents for "loss of support." It erred, however, in concluding that "loss of support" refers not only to lost earnings from employment, but also may include other "lost" income from any source whatsoever (e.g., pensions and annuities). The majority beg the question, disavowing this court's previous explanations of the purpose of the compensation act, in *Spreckels* and other cases, in favor of a less restrictive description of the act as " 'designed to mitigate hardship for dependents of . . . employees whose deaths arise out of the course of employment.' " (Maj. opn., *ante*, at p. 1196.)

When, as here, we can reasonably determine the legislative intent by examining the history and context of the statutory language, we should be guided thereby. The majority offer no sound basis for their conclusion that the Legislature intended that the phrase "the amount" should no longer refer to "the amount [*of earnings*]" but instead to the amount of income from any source whatsoever, or, alternatively, that the language has been rendered ambiguous and so must be construed to favor the partial dependents. It seems unlikely that the Legislature intended to alter the meaning of the phrase when it changed the method of calculating benefits owed to total dependents. Rather, it appears that the Legislature, content with our interpretation of the phrase in question, retained it unchanged while modifying the remainder of the statute several times over several decades.

Moreover, as the majority read it, the provision computes the level of a benefit based on investment income unrelated to employment. They point to no other provision in the Workers Compensation Act that has a similar effect. Rather, other workers' compensation benefits are calculated based on the employee's earnings. (See Lab. Code, §§ 4653, 4654, 4658, subd. (a)(2).) Indeed, under Labor Code section 4702, subdivision (b), "[t]he death benefit in all cases shall be paid in installments in the same manner and amounts as temporary total disability indemnity would have to be made to the employee . . . ." Temporary total disability payments are based on average weekly *earnings* during the period of such disability. (Lab. Code, § 4653.) They are thus ordinarily calculated based on wage loss.

Nor does the majority's approach appear consistent with the purpose of the workers' compensation laws: the partial dependents of an *indigent* employee unemployed at time of an injury resulting in death will receive nothing, while the partial dependents of an *affluent* employee also unemployed at the time of an injury resulting in death but who has income from independent sources will receive a benefit tied to how much he or she received from those sources. Moreover, under the majority's reasoning this peculiar result must apply not only in the relatively rare case of postemployment injury, e.g., from latent disease caused by industrial exposure to asbestos, but equally in the more usual case of an employee dying from an injury on the job. I doubt that this is what the Legislature intended.

In the case of death from an employment-related injury, like mesothelioma, that occurs after retirement—i.e., when the employee is no longer receiving any earnings from employment—construing the provision to refer to "the amount [*of earnings*]" is a potentially harsh result for partial dependents. That is, while a total dependent would presumably be entitled to the

statutory fixed amount, a partial dependent would presumably be entitled to no benefit at all. There is no windfall to the employer, however, who would then be required to pay to the Department of Industrial Relations the amount of the death benefit that would have been payable had the decedent been survived by a totally dependent spouse and no dependent minor children. (Lab. Code, § 4706.5, subds. (a) & (c).)

The Legislature, of course, may not have intended to create a gap in coverage for partial dependents in the case of latent illness. But it is a problem for the Legislature to fix. "[T]he adjustment of workers' compensation death benefits is properly and primarily a legislative function." (*Atlantic Richfield Co.* v. *Workers' Comp. Appeals Bd.*, *supra*, 31 Cal.3d at p. 722.) In my view, all we can do without distorting the statutory language and purpose is call the problem to the Legislature's attention.

Chin, J., concurred.